LEONARD BAILEY vs. THE HARTFORD & CONNECTICUT VALLEY RAILROAD COMPANY.

Hartford Dist., May T., 1888. PARK, C. J., CARPENTER, LOOMIS, BEARDSLEY and ANDREWS, Js.

The duty of the managers of railroad trains in approaching a grade crossing is primarily and in the highest degree to their passengers and to travelers passing at the crossing. They are under no circumstances required to exercise more than ordinary care towards persons traveling along the highway near the railroad.

A train was approaching a grade crossing in the evening, when it was dark and rainy. A highway passed under an intervening bridge and ran for a long distance parallel with and very near to the railroad. The plaintiff, who was driving a horse of ordinary gentleness on the highway, and was approaching the bridge from the other side, stopped when near the bridge and listened for the train which he knew would be passing about that time, but hearing no sound drove under the bridge and along the parallel highway. He had gone but a few rods when the whistle of the locomotive was blown a few rods back of the bridge and continued to be blown as the train passed him. His horse was frightened by the whistle and ran, and he was thrown out and injured. Held that the engineer was not in fault for not using more than ordinary caution in the circumstances to avoid frightening the horses of travelers on the highway.

The statute (Gen. Statutes, § 3554), requires that the steam whistle be blown or the bell rung all the way after a train is within eighty rods of a grade crossing. Held that the engineer was not in fault for blowing the whistle when the ringing of the bell would not have frightened horses on the highway, that being a more effective method of warning persons near the grade crossing of the approach of the train.

And held that no liability of the railroad company to the plaintiff could grow out of the fact that the engineer did not begin to blow his whistle so far back as the law required, and that the plaintiff, if it had been so blown, would have been warned of the approach of the train in season to have waited in a safe place for it to pass.

[Argued May 3d—decided July 7th, 1888.]

ACTION for an injury through the negligence of the defendant in the management of a train of cars upon its road ; brought to the Superior Court in Middlesex County. The defendant demurred to the complaint, the demurrer was overruled, and the case heard in damages by *Phelps, J.* The following facts were found by the court.

The defendant company on the 18th day of February, 1887, owned and operated a railroad running from Hartford to Saybrook on Long Island Sound, and passing through Middletown. At a little before six o'clock in the evening of that day the plaintiff, in the exercise of reasonable care and in the pursuit of his lawful business, was driving his horse, of ordinary gentleness, attached to a covered buggy, upon a highway in the town of Middletown, which for the distance of three fourths of a mile runs parallel to the defendant's railroad track and near to it, and for a considerable part of the way between the railroad track and Connecticut River, and near to the latter.

The injury to the plaintiff occurred while he was driving upon this parallel portion of the highway at a point where the railroad track was within about thirty feet of the highway, and about seventy-five feet from the river, and the highway lay between the two.

The plaintiff is a practising physician, and at the time of the accident was returning from a visit to a patient who resided on a highway which led from the west into this parallel highway, which it reached by passing under the railroad

track at an over-grade crossing on an iron trestle or bridge, and then immediately turning northwardly into the parallel highway. His course after coming from the west under the railroad track into the parallel highway, was in a northerly direction toward the city of Middletown along the parallel highway. The defendant's train was coming from the south. About forty rods northerly from the bridge is a grade-crossing in the line of the parallel highway, and about five and a half rods southerly from the bridge is the whistling post for the grade-crossing. As the plaintiff approached the bridge from the west, and when about one hundred feet therefrom, knowing it was nearly time for the defendant's train to be due, he stopped his horse about thirty seconds and listened for the sounds and signals of the train and did not hear them. He drove slowly, walking his horse, until he reached the west abutment of the bridge, when he again stopped and listened and heard nothing. He then drove under the bridge, and immediately after he had reached the parallel highway and was going northerly toward the grade-crossing which he intended to cross, and when about thirty-five rods therefrom, he heard the clicking of the rails produced by an approaching train, and saw the flash of the locomotive head-light, and instantly afterward heard the whistle for the grade-crossing. When the whistle was blown the plaintiff was not more than ten or twelve rods from the whistling post, and before it ceased the train had passed him on an embankment ten feet high and about thirty feet distant.

The plaintiff's horse was frightened by the sound of the whistle and became unmanageable, and ran and threw him from his carriage and severely injured him. The train was being run at the rate of thirty or thirty-five miles an hour and the evening was rainy and dark and the wind light and from the northwest. Immediately below the whistling post is a sharp curve in the track and on the westerly side of it a steep bluff, from sixty to seventy-five feet high, which somewhat, and in certain conditions of the atmosphere and wind considerably, tends to obstruct and interrupt the pass-

Bailey *v.* Hartford & Conn. Valley R. R. Co.

age of the sound of trains coming from the south, but it did not appear on the night in question that the signals required by law could not have been heard at the grade-crossing if they had been given eighty rods below; and northerly from the whistling post and between it and the grade-crossing is another curve in the track and another bluff, but the curve is not so sharp or the bluff so high as those below, but they cut off the view of the whistling post from the grade-crossing.

No whistle was blown eighty rods southerly from the grade-crossing, nor any signal given until the train reached the whistling post. At the rate the train was being run, the distance in time between the whistling post and the grade-crossing was only fifteen seconds. The engineer was watching the track and looking out for the grade-crossing and did not see the plaintiff. His attention was directed to the track alone and he was not looking to see if any one was traveling on the highway near it. He blew the whistle at the post for the grade-crossing above because he supposed he had no discretion in the matter, and that it was his duty to do so regardless of consequences. The locomotive bell was rung after the whistle ceased until the grade-crossing was reached. The whistling post had been where it now is about twenty years, and no complaint had been made of its location and no accident had before happened by the whistle having been blown there. The reason assigned by the defendant for its having been placed and kept at that point, was the existence of the curves and bluffs before mentioned, and the belief by it that a signal given there was more effective and reliable and more likely to be heard at the grade-crossing than if located eighty rods away.

The whole distance which the highway runs parallel to the railroad is made dangerous to travelers by the proximity of the railroad, and that part of it at and near the intersection with it of the highway coming from the west, which is about midway of it and is the point where the accident happened to the plaintiff, is especially so, particularly in the evening when it is dark and stormy, and at such a time

requires of the managers of railroad trains more than ordinary caution and care that persons traveling with teams on the highway do not have their horses unnecessarily frightened and themselves injured in consequence.

The court found the defendant guilty of negligence in giving no signal of the approach of its train eighty rods from the grade-crossing, and in first giving notice by whistling at the post ; and that reasonable care by the defendant under the circumstances required it to have given a signal by whistle or otherwise eighty rods from the crossing, and to have occasionally rung its bell and not blown its whistle along the line of the parallel highway until the crossing was reached.

Upon these facts the court assessed the damages at two thousand dollars, and rendered judgment for the plaintiff for that sum and costs.   The defendant appealed.

*H. C. Robinson* and *S. A. Robinson*, for the appellant.

We submit that the defendant owed no statutory duty to the plaintiff and was guilty of no negligence under the statute.   The statute reads as follows: " Every person controlling the motions of an engine upon any railroad shall commence sounding the bell or steam whistle attached to such engine when such engine shall be approaching and within eighty rods of the place where said railroad crosses any highway at grade, and keep such bell or whistle occasionally sounding until such engine has crossed such highway."   Gen. Statutes, § 3554.   The manifest purpose of this statute is to warn travelers at grade crossings to make due haste and cross over and avoid a collision, or if they are approaching the crossing, to warn them to stop and hold back their teams at a distance far enough away from the train to insure safety from collision, and to insure against an accident from fright of horses at the crossing.   It relates to no other class of travelers upon the highways, whether parallel to the railroad, or highways under or over railroads. We say that we owed the plaintiff no duty whatever to whistle earlier than we did; he was not at or near the cross-

ing, and is not claimed to have been nearer than about one eighth of a mile; he was not about to cross it, and he was not near to it with the intention of crossing it. Our duty to whistle at the eighty rod limit, if one existed, was a duty we owed to persons in danger of risking their lives at a grade-crossing and not to persons on a parallel highway who were in no danger of risking their lives or property at the crossing. This is not, however, any longer an undecided question in this country. The decisions sustaining our view are very numerous. *Harty* v. *Central R. R. Co.*, 42 N. York, 468. The liability in this case was claimed from neglect to comply with a New Jersey statute similar to ours. The law of that state required the signal for a grade-crossing to be blown at least three hundred yards from the crossing. Ours requires it to be sounded within eighty rods of it. The court in its opinion makes use of the following language:—
" The sole object of the law as it seems to me was to protect persons traveling upon a highway *at or near* the crossing. In the language of Judge ALLEN in *People* v. *N. York Central R. R. Co.*, 25 Barb., 199, in reference to a similar law of this state, the hazards to be provided against are two-fold; first, danger of actual collision at the crossing; second, that of damage by frightening of teams traveling upon the public highway near the crossing. Railroads were not required by this law to ring the bell nor sound the whistle when the highway passed along the railroad, nor when it passed at an elevation over it or under it, nor were they required to take these precautions for the protection of persons walking along upon the railroad." To the same effect and in very strong language is the case of *O'Donnell* v. *Providence & Worcester R. R. Co.*, 6 R. Isl., 211. The court says in this case " that in order to a recovery it is not sufficient that some duty or obligation should have been neglected by the defendants, but it must have been a neglect of some duty or obligation to him who claims damages for the neglect." Comyns in his Digest, *Actions upon Statutes, F*, confines " the remedy to such things as are enacted for the benefit of the person suing." See also *Ricketts* v.

*East & West India Dock & Railway Co.*, 12 Com. Bench, 160; *East Tennessee R. R. Co.* v. *Feathers*, 10 Lea (Tenn.), 103; *Randall* v. *B. & O. R. R. Co.*, 109 U. S., 478; *Holmes* v. *Central, R. R. Co.*, 37 Geo., 593; *Elwood* v. *N. Y. Central R. R. Co.*, 4 Hun, 808; *Bell* v. *Hannibal & St. Jos. R. R. Co.*, 72 Misso., 58; *Rine* v. *Chicago & Alton R. R. Co.*, 88 id., 392. WILSON, C. J., in *Rosenberger* v. *Grand Trunk R. R. Co.*, 32 U. Canada Com. Pleas, 356, makes this inquiry as to the Bell and Whistle Act, and the purpose of it:—"What is the object of this enactment? What is it the ringing of the bell or sounding of the whistle is required for by the statute? Is it to warn all persons traveling on the highway of the approach of the train? or is it intended to warn those persons only who are upon the highway and are about to use it by crossing the railway track?" The court says it is only the latter class that it is intended for. See also Pierce on Railroads, 348, 350; Rover on Railroads, 704; *Hill* v. *Portland & Rochester R. R. Co.*, 55 Maine, 438, 441; *Whitney* v. *Maine Central R. R. Co.*, 69 id., 210; *Norton* v. *Eastern R. R. Co.*, 113 Mass., 366; *Prescott* v. *Eastern R. R. Co.*, id., 370; *Favor* v. *Boston & Lowell R. R. Co.*, 114 id., 350; *Pollock* v. *Eastern R. R. Co.*, 124 id., 158; *Lamb* v. *Old Colony R. R. Co.*, 140 id., 79.

*S. L. Warner* and *M. E. Culver,* for the appellee.

The demurrer admits that the defendant's whistle was negligently sounded and that it was unnecessary at the time and place and in the manner complained of. It places these allegations and facts beyond contention. In *Havens* v. *Hartford & New Haven R. R. Co.*, 28 Conn., 69, the demurrer was held to admit some negligence. In *Lamphear* v. *Buckingham*, 33 Conn., 237, the demurrer was held to conclusively admit negligence and injury, though the finding presented no negligence in fact. And if it is necessary to support this action the court must hold here that the acts causing the injury were, as alleged, "*negligent, unnecessary and wanton.*"

The sole question then left for consideration on the plead-

ings is this:—Can the acts charged and admitted by the pleadings, supplemented by those found by the court, claimed and found to be negligence in fact resulting in injury, be held in law an insufficient legal basis for a recovery of the actual damages suffered by the plaintiff? We insist that the defendant's contention here must remain restricted, 1st, to the abstract proposition of law that it is possible to place a rational being in the control of dangerous material forces dependent upon his will or volition in their use, capable of fatal injury to his fellow men, in such a position that for their negligent use resulting in injury no legal responsibility can result; or, 2d, that in the case in question under no combination of circumstances was it possible for the defendant to run its train on the over-grade crossing at an elevation of four feet above the horse's head and a distance of thirty feet from travelers on the highway, in such way as to raise any duty of care, either to give signals of danger or to refrain from unnecessarily sounding the whistle, thereby producing an actionable injury; or, in other words, being on that over-grade crossing, the law hedges them in against any claim of damages for negligence in fact in the use of powers and forces under their control, such as the complaint sets forth.

The statute relating to grade-crossings does not impose a duty touching grade-crossings alone. The action is not on the statute. We may leave out of the case every duty imposed by it and yet the acts charged may be in the highest degree culpable. *Grippen* v. *N. York Central R. R. Co.*, 40 N. York, 34, 42. The doctrine is now established that "whenever one person is by circumstances placed in such a position with regard to another, that every one of ordinary sense who did think, would at once recognize that if he did not use ordinary care and skill in his own conduct with regard to those circumstances he would cause danger or injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger." *Heaven* v. *Pender*, 11 Q. B. Div., 503, 508. The duty to sound the whistle was subordinated to a higher law, that which protects the lives and limbs of the public. They had a duty to

run their trains, but that cannot be held to justify their negligent injury to persons. Under all circumstances, the exercise of charter powers, duties and franchises is inexcusable at any place and in any time if such exercise will result in the peril of the life or limb of persons exercising reasonable care. "Powers given by statute," observes WATSON, B., "are not to be used to the peril of the lives ·or limbs of the Queen's subjects." *Manley* v. *St. Helen's Canal & Railway Co.*, 2 Hurlst. & N., 852; Addison on Torts, § 1041. A general duty to do a particular act at some time must not be confounded with an obligation to do it at any time, at all times, under all circumstances, and regardless of consequences. The distinction is absolute between cases where the legislature has directed that the thing shall "at all events be done," and where "a discretionary power is conferred, with choice of times and places." The rule is that where a discretion is given it must be exercised with regard to the common rights of others. Pollock on Torts, 112; *Metropolitan Asylum District* v. *Hill*, L. R., 6 App. Cas., 193. In all suits for negligence, to excuse a negligent act resulting in injury, the corporate defendant must show that the legislature contemplated the necessary exercise of the power and duty upon which the exemption of liability is claimed, at the time, in the manner, to the extent, and under the circumstances complained of. But the proposition must be modified, if indeed it can be called such, that charter or statutory powers must be exercised with judgment and caution—that the thing must not be carelessly and negligently done, and that unnecessary injury must not be inflicted. Addison on Torts, § 1040; *Radcliff's Exrs.* v. *City of Brooklyn*, 4 N. York, 195; *Ballinger* v. *N. York Central R. R. Co.*, 23 id., 42; *London & N.W. Railway Co.* v. *Bradley*, 3 Macn. & G., 341; *Attorney Gen.* v. *Colney Hatch Lunatic Asylum*, L. R., 4 Cha. App., 146; *Mersey Dock Trustees* v. *Gibbs*, L. R., 1 H. L., 93, 112. "If a railroad company do not conform to the city ordinances providing certain safeguards in the use of its engines, it is not in the lawful pursuit of its business, and is responsible for any

injury which it may occasion, if the party injured be not in fault." *Balt. & Ohio R. R. Co.* v. *The State*, 29 Maryl., 252.

But the statute imposes a duty to commence sounding the whistle or ringing the bell eighty rods below the grade-crossing. We contend that where a statute is passed imposing a duty to prevent *the kind of injury complained of*, and that duty is found to have been neglected, and a disregard of such duty would have been likely to cause harm of the kind complained of in all such cases, the disregard of such duty becomes an important fact in fixing the measure of duty imposed in the particular case and in determining the question of common law negligence in connection with all other facts of the case. Pollock on Torts, 169, 170; *Blamires* v. *Lancashire & Yorkshire R. Co.*, L. R., 8 Exch., 283; *Gorris* v. *Scott*, 9 id., 125. The statute imposed the duty, and the plaintiff had a right to calculate on its due performance and act upon the presumption that it would be performed. Smith on Negligence, 126; *N. Eastern Railway Co.* v. *Wanless*, L. R. 7 H. L., 12; *Kennayde* v. *Pacific R. R. Co.*, 45 Misso., 255; *Tabor* v. *Missouri Valley R. R. Co.*, 46 id., 353; *Wright* v. *Malden & Melrose R. R. Co.*, 4 Allen, 283; *Lane* v. *Atlantic Works*, 111 Mass., 136; *Hyde Park* v. *Gay*, 120 id., 589.

The claim of the defendant that the statute imposes no duty in favor of any one except at the grade-crossing, is without foundation of principle or authority, as applicable to the facts of this case. Here common law negligence is charged and found. But the duty applies to the whole eighty rods. The statute provides damages for a neglect of it. Gen. Statutes, § 3554. All cases hold that where a specific duty is imposed its neglect gives the injured party a remedy. 2 Inst., 486; Com. Digest, Action on Statutes, F.; Addison on Torts, § 58; *Couch* v. *Steel*, 3 Ellis & B., 402; *Cook* v. *N. York Floating Dock Co.*, 1 Hilton, 436. In *People* v. *N. York Central R. R. Co.*, 25 Barb., 199, it is held that the danger to be provided against is twofold—collision at crossings and frightening horses on the highway. See also *Ransom* v. *Chicago, St. Paul &c. R. R. Co.*, 62

Wis., 178; *Wakefield* v. *Conn. & Passumpsit River R. R. Co.*, 37 Verm., 330. In *Pennsylvania R. R. Co.* v. *Barnett*, 59 Penn. St., 259, it is held on similar facts that " it is no justification that the act was done in the exercise of a lawful act, if the injury arose from doing it negligently. If danger might be apprehended then they must give some notice that it might be avoided." In *Lamb* v. *Old Colony R. R. Co.*, 140 Mass., 79, relied upon by the defendant, it is held that " the act of firing, like that of sounding the whistle and blowing off steam, is one necessarily incident to running the train, *not continuous, but occasional, and so to some extent capable of being regulated in its use*, and it may be negligent to do it in places where there are persons who may be endangered by it and where its use can be avoided, as at stations and highway crossings and at short portions of the railroad near the highway." Thus this case concedes our position.

We also contend that every one who lawfully interferes with a highway so as to render it dangerous, is bound to guard against such danger, and their failure is actionable negligence. Smith on Negligence, 61; *Cleveland* v. *Spier*, 16 Com. Bench, N. S., 399; *Whiteley* v. *Pepper*, 2 Q. B. Div., 276. The place was one of more than ordinary danger ; more than ordinary care was therefore demanded. The claim will not avail that notwithstanding they did not signal at eighty rods, it was their duty to whistle at the point in question. As we have said in another place, they had no right to select the most dangerous spot in the whole distance and whistle there. They could have rung their bell, and the court have so found. The statute gives them a discretion to use either signal. They had no right to select the most dangerous one. They say that if they had not whistled they might have killed some one on the grade-crossing. The answer to this is, that because they saw fit to neglect to whistle further away, when they might have done so and the warning have been heard, they cannot offer as an excuse for injuring us, whom they might have seen if they had looked, that they were trying to avoid injuring some one that possibly might

be near the crossing whom they could not see. The circumstances demanded that the defendants should have slackened their speed. In the case of *Continental Improvement Co.* v. *Stead*, 95 U. S. R., 161, the court says:—" The speed of a train at a crossing should not be so great as to render unavailing the warning of its whistle and bell; and this caution is especially applicable when their sound is obstructed by winds and other noises, and where intervening objects prevent those who are approaching the railroad from seeing a coming train. In such cases, if an unslackened speed is desirable, watchmen should be stationed at the crossing. We think the judge below was perfectly right, therefore, in holding that the obligations, rights and duties of railroads and travelers upon intersecting highways are mutual and reciprocal, and that no greater degree of care is required of one than of the other."

ANDREWS, J. A highway runs parallel with and near to the defendant's railroad track for about three fourths of a mile at a part of its road two or three miles south of the city of Middletown. A passenger train moving northerly at the rate of thirty or thirty-five miles an hour along that part of the railroad, sounded its whistle as a signal of its approach to a grade-crossing. The whistle was sounded in a reasonable manner, and at the regular whistling post about forty-five rods south of the grade-crossing. The whistling post had been at the same place for twenty years. Southerly from the post there was a sharp curve in the road and on its westerly side a high bluff from sixty to seventy-five feet high. The post was set up and kept at that place for the reason, assigned by the defendant, that because of the curve and the bluff a signal given there was more effective and reliable and more likely to be heard at the grade-crossing than if given eighty rods away. The train did not whistle at the point eighty rods from the crossing.

The plaintiff was traveling on the parallel highway going north, and was at a point about thirty-five rods south of the grade-crossing when the whistle sounded. He had a horse

of ordinary gentleness and was driving with ordinary care. His horse was frightened by the whistle, ran, and threw him out on the ground, and he received the injuries thereby which are complained of in this action.   It was in the evening and it was dark and raining.   The engineer of the train was watching the track and looking out for the grade-crossing, and he did not see the plaintiff.   His attention was directed to the track alone and he was not looking to see if any one was traveling on the highway.

The Superior Court found that "the whole distance which the highway runs parallel to the railroad is made dangerous to travelers by the proximity of the railroad to it, and that part of it where the accident happened is especially so, particularly in the evening when it is dark and stormy; and at such a time requires of the managers of railroad trains more than ordinary caution and care that persons traveling with teams on the highway do not have their horses unnecessarily frightened and themselves injured in consequence."

Having laid down this as the rule of duty incumbent upon the defendant at that time and place, that court found the defendant "guilty of negligence in giving no signal of the approach of its train eighty rods from the grade-crossing and in fact giving notice by whistling at the post ; and that reasonable care by the defendant under the circumstances required it to have given a signal by whistle or otherwise eighty rods from the crossing, and to have occasionally rung its bell and not blown its whistle along the line of the parallel highway until the crossing was reached."   And thereupon the court rendered judgment in favor of the plaintiff for substantial damages.   The defendant has appealed to this court.

The law requires of the managers of railroad trains the utmost possible care for the safety of their own passengers. A section of the statutes directs with particularity what the engineer of a train must do when approaching a grade-crossing.   These are duties of the very highest nature. The duty which such managers are under to persons traveling with teams on a highway is a limited one at the most,

and one that should never be permitted to interfere in the slightest degree with the higher duty they owe to their own passengers and to persons upon grade-crossings. Under no circumstances are they required to exercise more than ordinary caution and care towards persons traveling on a highway. And in so deciding the Superior Court required of the defendant that which the law does not require.

A highway cannot be laid out within three hundred feet of a railroad except upon the approval of a judge of the Superior Court. A railroad cannot be located except upon the approval of the railroad commissioners. When a railroad is located near to a highway and the location is approved by the railroad commissioners, or when a highway is laid out within the prohibited distance of a railroad and the lay-out has been approved by a judge, such approval in either case implies an adjudication upon the question of danger to travelers on the highway by reason of trains on the railroads. After having such an approval of its location a railroad company has authority to operate its road in the usual and ordinary way, including the right to make all the noises incident to the working of its engines and cars, and also the right to give the usual and proper signals of danger as by the sounding of whistles or the ringing of bells. And while exercising such rights in a reasonable manner the railroad company is not liable for injuries occasioned by horses, when being driven on a highway, taking fright at such noises.

The whistle which frightened the plaintiff's horse was a signal that the train was approaching a grade-crossing. There was no claim but that the whistle was sounded properly for that purpose. The statute (Gen. Statutes, § 3554), directs that the engineer of every train shall within eighty rods of any grade-crossing sound the whistle or ring the bell. This is required that all persons who are about to cross the track at the grade-crossing may have notice that the train is coming. Obviously, such notice should be given at such place and by such means as will be the most likely to accomplish the object which the statute has in view. That

the whistle is a more effective means of warning than the bell is established by common knowledge as well as by an almost universal usage. So uniform, indeed, is this usage, that an omission to sound the whistle, except at a place where the railroad commissioners had authorized the whistle to be omitted, even if the bell was rung, would undoubtedly be regarded as negligence. If by reason of curves in the railroad, or by reason of high bluffs on either side, the signal when given at a distance of eighty rods from the crossing is not likely to be heard by persons near the crossing, but when given at a distance of forty-five rods is certain to be heard by such persons, then by every rule of good sense the signal, if to be given but once, should be given at the latter distance and not at the former. To argue the other way is a plain "sticking in the bark." The finding upon this part of the case is as follows:—"Immediately below the whistling post is a sharp curve in the track and on the westerly side of it a steep bluff from sixty to seventy-five feet high, which somewhat, and in certain conditions of the atmosphere considerably, tends to obstruct and interrupt the passage of the sound of trains coming from the south." Taken in connection with the successful use for twenty years by the defendant of the forty-five rods distance, this makes a very strong affirmative case that the signal when given there is much more likely to be heard at the grade-crossing than when given at the eighty rods distance. The finding continues:—"But it did not appear on the night in question that the signals required by law could not have been heard at the grade-crossing if they had been given at eighty rods below." It is sufficient just here to say that this may be no more than a statement that there was an absence of evidence on the point. We will recur to it further on.

The defendant's engineer gave a signal required by law. He gave it in a proper manner, by the most efficient means, and so far as appears at the place where it would have the most effect. To call such an act, when done in such a manner, negligent, seems a misapplication of terms. It was

claimed upon the argument by the defendant's counsel, and apparently with confidence, that had the engineer omitted to give this very signal he would have exposed himself to a criminal prosecution and to a fine of not less than ten dollars. Gen. Statutes, §§ 3554, 3557, and 3607. · This is a view of the case which we have not found it necessary to consider.

Negligence has been defined by this court to be a failure to perform some act required by law, or doing the act in an improper manner. It is certain that the act of the engineer does not come within this definition.

The recent case of *Lamb* v. *Old Colony R. R. Co.*, 140 Mass., 79, was as follows:—The plaintiff was driving his horse along a highway parallel to and adjoining the defendant's railroad, his horse was frightened by the smoke from the engine of a passing train, and the plaintiff was injured in consequence. The smoke which frightened the horse was occasioned by "firing up" the engine—that is mending the fire, or adding fuel to it, the ordinary effect of which is to cause the emission for a short time of very black dense smoke from the smoke stack. The contention of the plaintiff was that it was practicable to run the train for the whole distance where the railroad adjoined the highway without firing up, and that the act of firing up on the stretch of railroad adjoining the highway was unnecessary for the ordinary running of the train and exposed travelers to an unnecessary danger. There was no evidence in the case that the persons managing the train knew that the plaintiff was on the highway, but there was evidence that they would have seen him if they had been on the lookout for travelers on that part of the highway; and the plaintiff on this part of the case contended that the defendant was negligent in not observing him and avoiding firing up when it would endanger him. Upon these facts and claims the court said :—" The lawfulness of the act cannot depend upon whether a traveler happens to be at such a distance from the engine that he will not be endangered by the smoke caused by it, or in such a position that he cannot be seen by the fireman or engineer.

If it is their duty to see one traveler outside the location of the railroad it is their duty to see how many travelers there are and to observe the position, direction and speed of each, the speed of the engine, the state of the atmosphere, the direction and force of the wind, the character of the coal used, and other circumstances which may determine whether all travelers are and will continue to be, until the smoke is dissipated, in such a position that their horses will not be affrighted by it. Being under no obligation to watch for travelers the defendant could not have been guilty of negligence in not seeing and avoiding the plaintiff."

We come back now to the language of the finding before quoted that—"it did not appear on the night in question that the signals required by law could not have been heard at the grade-crossing if they had been given eighty rods below." The judgment rendered makes it probable that the court regarded this as equivalent to a positive finding that on the night in question the signals required by law could have been heard at the grade-crossing if they had been given eighty rods below; and that consequently the engineer was negligent on that night in not sounding the whistle at that distance from the crossing. If this is correct, then upon some other occasion when the conditions were such that the signals required by law could not be heard at the grade-crossing if given eighty rods below, the engineer would be negligent if he should give them at that distance and omit to give them at the whistling post. And thus the duty of the engineer to give or not give the signals required by law at the whistling post would be made to depend upon the direction and force of the wind, the degree of moisture in the air, the electrical condition of the atmosphere, or some one or all of the circumstances which affect the transmission of sound. These are conditions many and perhaps all of which are liable to change almost every moment and which it would be wholly impracticable for the engineer of a railroad train to ascertain beforehand. Indeed it is very questionable whether there is any human knowledge by which these conditions and changes can be predicted

with any such certainty as to make them available in the management of railroad trains. It would be clearly unjust to hold an engineer to be guilty of negligence for being ignorant of those things which the highest skill has hitherto failed to discover.

There is error in the judgment of the court below.

In this opinion the other judges concurred.