HENRY L. BATES, ADMINISTRATOR, *v.* THE NEW YORK & NEW ENGLAND RAILROAD COMPANY.

New Haven & Fairfield Cos., Oct. T., 1890.   ANDREWS, C. J., CARPENTER, LOOMIS, SEYMOUR and TORRANCE, JS.

The statute (Gen. Statutes, § 3554,) requires engineers of railroad trains to commence sounding the steam whistle or bell when within eighty rods of any grade crossing, and to keep sounding it occasionally until the crossing is passed.   Held that where the highest degree of diligence may justly be required, a literal compliance with the statute may not be enough.

This is especially so where the duty which the statute was intended to enforce did not originate in and is not measured by the statute, but existed at common law.

An engineer, approaching a grade crossing, where there was a whistling post eighty rods from the crossing, blew the whistle at a point four hundred feet short of the post and did not blow it again.   The bell however was constantly rung until the crossing was passed.   The plaintiff's intestate was approaching the crossing when the whistle was blown and was soon after killed there.   The wind was unfavorable for carrying the sound of the whistle to him and it did not appear that he heard it, although it could have been heard.   The court below found, wholly by reason of the neglect of the engineer to blow the whistle when within the eighty rods, that he was guilty of negligence.   Held that this court could not, as matter of law, see that the court below erred in so holding.   [Two judges dissenting.]

The plaintiff's intestate was driving toward the crossing with a wagon
used for carrying wood, on which was an empty woodrack, and he sat
on a string piece of the rack. This gave him a low position, where
he could not so easily see the approaching train and could not so easily
manage his horse, if frightened, as upon a seat of ordinary height.
The horse was frightened at the sudden sight of the locomotive near
him, and became uncontrollable and dashed upon the track in front of
the engine. The court below found that the plaintiff's intestate was
not guilty of contributory negligence. Held that this court could not,
as a matter of law, see that the court below erred in so holding.

[Argued October 31st, 1890—decided March 20th, 1891.]

ACTION for causing the death of the plaintiff's intestate
by negligence in the running of a railroad train of the de-
fendant; brought to the Superior Court in Fairfield County,
and heard in damages after a default by *F. B. Hall, J.* The
court made the following finding of facts.

The defendant is a railroad company, operating a railroad
which passes through the town of Danbury. On the 16th
of February, 1889, about noon, Edward H. Bates, the plaint-
iff's intestate, while passing with his horse and wagon over
a grade-crossing of the railroad, a short distance west of the
city of Danbury, was struck by the locomotive of the de-
fendant's train and killed.

The train in question was known as the "pay train," and
passed through Danbury weekly, being run as a section of
and closely following a regular passenger train. It consisted
of a locomotive and one passenger car, and was managed and
controlled by an engineer, fireman, conductor and brakeman.
The train was approaching Danbury from the west, and, at
the time of the accident, was running at the rate of about
forty miles an hour, and faster than passenger trains are
usually run at this place.

A whistling-post, placed by the defendant, stood between
seventy and eighty rods west of the crossing in question,
at which it was the custom of trains approaching this cross-
ing from the west to give the crossing signal of two long
and two short blasts of the whistle. On the day in question
the engineer failed to blow the whistle within eighty rods of
the crossing in question, but blew it between seventeen and

eighteen hundred feet west of the crossing, and more than four hundred feet west of the whistling-post, and did not again blow the whistle before the accident. The bell of the engine was however continuously rung from the time the whistle was blown until the crossing was reached. The railroad commissioners had made no order dispensing with the blowing of the whistle upon approaching this crossing.

The engineer, who sat on the right hand side of the locomotive, did not see Mr. Bates. The fireman first saw him, when he was within about fifty feet of the crossing and was endeavoring to stop his horse. The fireman immediately called out to the engineer, but it was then too late to avert the accident.

The crossing in question is at right angles to the track. Immediately adjacent to the track on the north is a bridge over a stream about ten feet wide. For a distance of about seventy feet north of the bridge the highway is substantially level, and commands a view of the railroad track to the west for nearly a mile, for which distance the track is substantially straight. A few feet east of the crossing the track enters a deep cut, and at the same time makes a sharp curve toward the north. Going north from a point about eighty feet north of the track, the highway ascends, and the view of the track from the road is obstructed by a stone wall and bank, and by the trees, up to a point three or four hundred feet north of the track, where again a clear view of the track at the west is obtained.

Upon the day in question the plaintiff's intestate was driving down the hill from the north. He was a careful driver, was driving a gentle horse, and was sitting upon one of the string-pieces of a wood-rack upon his wagon; upon which side did not appear. The wood-rack consisted of two poles or string-pieces, running lengthwise of the wagon and resting upon the bolsters, and connected with cross-pieces, and having upright stakes for holding wood, and was similar to that ordinarily used by farmers in drawing wood.

Sitting in so low a position one could not, in passing along that part of the road where the view of the track is ob-

structed by the wall and bank, so easily obtain a view of the track as when seated upon the raised seat of an ordinary wagon, nor could one seated as Mr. Bates was so easily control his horse when frightened, as when sitting upon an ordinary wagon seat.

When he was at the point before described on the hill, three or four hundred feet north of the track, the train was not in sight. Whether or not, after passing that point, and while the track was not in sight, he heard the whistle for the crossing, did not appear. The whistle as blown for this crossing could have been heard on that day by a person on the highway, and as far from the engine as he was at the time the signal was blown. The wind at this time was blowing from the east. If he heard it, it would have been reasonable for him to believe that it was not for the crossing over which he was to pass, but for the next crossing, nearly a mile west.

When he reached the level space at the foot of the hill, and saw the near approaching train, his horse became frightened and unmanageable and ran toward the track. He used every endeavor to stop his horse, and nearly succeeded in doing so at a point very near the track, when the horse, frightened by the engine, sprang in front of the engine, and Mr. Bates was struck and killed.

I find that due regard for the safety of persons passing along this highway, toward and over the crossing, requires that the engine whistle upon approaching trains be blown within eighty rods of the crossing.

I find that Mr. Bates was not guilty of contributory negligence, and that the accident was caused by the defendant's negligence in having failed to blow the whistle within eighty rods of the crossing.

Upon these facts the defendant claimed that Mr. Bates was guilty of contributory negligence, and that the defendant was not negligent, and was not upon the facts required to blow the whistle within eighty rods of the crossing; which claims the court overruled, and assessed damages for the plaintiff in the sum of $2,000. The defendant appealed.

*E. D. Robbins*, for the appellant.

1. The function of a crossing-whistle is to give timely warning of the approach of a train. The important consideration for the traveler on the highway is not the distance of the engine from the crossing. What concerns him is solely the question of time. If the engine is to pass the crossing in one minute, it is entirely immaterial to him how far and how fast it is to go. It makes no difference with him in consulting for his safety whether it has three hundred and twenty rods to go at the rate of sixty miles an hour, or whether it has eighty rods to go at fifteen miles an hour. In either case he has just the same time in which to stop and look out for his horse, or in which to keep on and perhaps get hurt. In the present case, in which the train was going at the rate of forty miles an hour, it passed over seventeen hundred and sixty feet in half a minute. The court finds that the engineer whistled when his engine was that distance from the crossing. Surely thirty seconds is none too long a warning to a traveler on a highway approaching a dangerous railroad crossing! There could be no question that the whistle as blown would be audible on the highway. Mr. Bates is dead, and we cannot know whether he actually heard it or not; but the court finds that he could have heard it. There is no reason for doubting that he did hear it. We know that after he saw the train coming he drove along some thirty feet further, to wait there for it to pass.

2. Does the rule of law which prescribes the duty of the engineer as to whistling, imperatively require that he should whistle exactly eighty rods from a highway crossing? Such a rule would be utter unreason. There is no mysterious efficacy about this exact distance. Many trains move very rapidly, and would go a number of rods while the engineer turned from taking care of his machinery to pull his whistle. In the case at bar the engineer reached the eighty-rods-point within seven seconds of the time when he commenced to blow his whistle. Or is there no rule of law on the subject, and is it left to the caprice of juries and the varying notions of individual judges to say, that at this or that particular

crossing the whistle ought to have been sounded at this or that distance? Then no engineer can ever know his duty in this matter. His own judgment is of no avail, and his superiors cannot help him. It certainly never would have seemed to any experienced engineer, or to any railroad superintendent, that it could be considered negligence, at a place like the one where this accident occurred, to whistle in time to give thirty seconds warning to travelers on the highway. It was in order to avoid the confusion and injustice of such a state of law that the legislature regulated the subject by statute. The duty of the railroad company is fixed by that statute, and it is thereby made as burdensome as the legislature thought it best that it should be made. A rule of law so established is not to be added to by the courts nor varied by the caprice of juries. *Dyson* v. *N. York & N. Eng. R. R. Co.*, 57 Conn., 9; *Beisiegel* v. *N. York Central R. R. Co.*, 40 N. York, 9; *Grippen* v. *Same*, id., 34; *Van Note* v. *Hannibal & St. Joseph R. R. Co.*, 70 Mo., 641: *Turner* v. *Kansas City, etc. R. R. Co.*, 78 id., 578; *Chicago, B. & Q. R. R. Co.* v. *Damerell*, 81 Ill., 450; *Chicago & Alton R. R. Co.* v. *Robinson*, 106 id., 142; *Chicago, B. & Q. R. R. Co.* v. *Dougherty*, 110 id., 521; Wood on Railway Law, 1309. Plainly, if the words of the statute are taken in their natural meaning, as they have been by other courts in cases above cited, then in the case at bar the ringing of the bell was alone sufficient to comply with the law. If, on the other hand, the statute is to be broadly construed, and for the sake of securing a timely warning an obligation to blow the whistle is to be added to the obligation of ringing the bell, then in the same spirit it will be held that, when an engineer is driving an express train at the rate of forty or sixty miles an hour, to blow the whistle a few seconds before reaching the whistling post is evidence of additional caution and not of negligence.

3. The question, what signals it was the duty of the engineer to give on approaching the highway crossing, is a question of law; the question whether that duty was actually performed would be a question of fact. *Nolan* v. *N. York*,

*N. Hav. & Hartford R. R. Co.*, 53 Conn., 462, 471; *Dyson* v. *N. York & N. Eng. R. R. Co.*, 57 id., 9.

4. Mr. Bates was guilty of contributory negligence. An accident like this one is of most unusual occurrence. The reason of its happening lay in the fact that the driver was so seated as to have no control of his horse. He was sitting sideways on the outside string-piece of his wagon, with his legs loosely dangling toward the ground. His horse was a gentle one, but even gentle horses are afraid of locomotives. It is plainly imprudent to bring even a gentle horse within fifty feet of an onrushing engine unless it is under firm control. When a traveler on a highway hears a whistle, he knows that a train is coming somewhere. It is his duty to take no risks. If he is seated so that he cannot control his horse, he should approach no nearer until he knows that he is safe in so doing. If Mr. Bates was already within fifty feet of the track when the whistle sounded, he then saw the train, and stopped without taking the trouble to change his position, although he had half a minute to do it in. If he was farther back from the track, he kept on going nearer regardless of the risk of the frightening of his horse. Either course of conduct was the careless act of an ordinarily careful man, such as so often causes one of these deplorable accidents. If, on the other hand, Mr. Bates did not listen for a train as he drew near the railroad crossing, he was guilty of such negligence as would plainly bar recovery in this action. If he did not look up the track when he got past the stone wall, eighty rods from the crossing, he was in this also guilty of contributory negligence which would defeat this action. *Peck* v. *N. York, N. Hav. & Hartford R. R. Co.*, 50 Conn., 379, 392; *Railroad Co.* v. *Houston*, 95 U. S. R., 697; *Schofield* v. *Chicago, Milw. & St. Paul R. R. Co.*, 114 id., 615; *Tully* v. *Fitchburg R. R. Co.*, 134 Mass., 499.

*L. D. Brewster* and *H. B. Scott*, for the appellee.

CARPENTER, J.  This is an action for negligently causing the death of the plaintiff's intestate. The defendant suffered

a default and was heard in damages. The Superior Court found the facts, finding that the defendant was guilty of negligence, and that the deceased was not guilty of contributory negligence, and rendered judgment for the plaintiff for substantial damages. The defendant appealed. The claim is that the court erred in matters of law in respect to both findings.

1. As to the negligence of the defendant. The accident occurred on the defendant's railroad, west of the city of Danbury, where a highway running north and south crosses the railroad at nearly right angles, the train going east. It appears that there is a whistling-post between seventy and eighty rods west of the crossing; that the whistle was not blown, as was usually done, at the post, or at any point between that and the crossing; and that it was blown at a point some four hundred feet further from the crossing. On that ground alone the court found negligence.

The statute, (Gen. Statutes, § 3554,) provides that " every person controlling the motions of any engine upon any railroad, shall commence sounding the bell or steam whistle attached to such engine when such engine shall be approaching, and within eighty rods of, the place where said railroad crosses any highway at grade, and keep such bell or whistle occasionally sounding until such engine has crossed such highway." The practical interpretation of this statute is to sound the whistle when within eighty rods of the crossing, and to ring the bell until after passing the crossing. The language of the statute is in the alternative, and it will be literally complied with if either is done to the exclusion of the other; but in a matter of this importance, where the highest degree of diligence may justly be required of railroad companies to protect life at crossings, a strictly literal compliance with the statute is not always enough; especially when it is apparent that such compliance may be ineffectual. There are times when statutes should be complied with according to their spirit and intent. Particularly is that so when the duty which the statute is designed to enforce does not originate in and is not measured by the statute. Here is a duty

which exists at common law. It has its origin in the humane
instincts of the race. Obviously the statute was not de-
signed to define and limit the duty of railroad companies.
They cannot do less than the statute requires; there are
times and occasions when they may properly be required to
do more. If both the whistle and bell would be more ef-
fective, the statute ought not to be so construed as to pre-
vent their use from being required. Inasmuch as both are
at hand ready for instant use, there can be no hardship in
requiring both. And so this court was fully justified in say-
ing on this subject " that an omission to sound the whistle,
except at a place where the railroad commissioners had au-
thorized the whistle to be omitted, even if the bell was rung,
would undoubtedly be regarded as negligence." *Bailey* v.
*Hartford & Conn. Valley R. R. Co.*, 56 Conn., 444. It can-
not be said that this is technically negligence, but without
damage ; for it cannot be known that the omission to sound
the whistle at the post was not the cause of the accident ;
obviously it might have been. And the court was justified
in finding negligence. The wind was blowing from the east,
so that its tendency was to carry the sound from the de-
ceased. It does not appear whether he heard it or not. Per-
haps there is some presumption that he did not; otherwise
effectual measures would have been taken to prevent the
accident. Perhaps also, if he did hear it, the sound was so
indistinct as to justify the suggestion of the court that he
might reasonably have believed that it was for another
crossing nearly a mile west. Who then can say that if the
whistle had been sounded at a point some four or five hun-
dred feet nearer the crossing the accident would not have
been prevented ?

From what has been said it will be readily inferred that
we are not prepared to assent to the reasoning of the defend-
ant's counsel, that the sounding of the whistle some seven-
teen hundred feet from the crossing, thirty seconds away, was
better for the deceased than it would have been at the post,
thirteen hundred feet and twenty-three seconds away. A
danger signal, giving twenty-three seconds of time, if heard

and heeded, is better than one giving thirty seconds, if not heard, or, if heard, mistaken for something else.

2. Contributory negligence.   The facts bearing upon this part of the case are found as follows :—" The engineer, who sat on the right hand side of the locomotive, did not see the deceased.   The fireman first saw the deceased when the latter was within about fifty feet of the crossing and was endeavoring to stop his horse.   The fireman immediately called out to the engineer, but it was then too late to avert the accident.   The crossing in question is at right angles to the track.   Immediately adjacent to the track on the north is a bridge over a stream about ten feet wide.   For a distance of about seventy feet north of the bridge the highway is substantially level, and commands a view of the railroad track to the west for nearly a mile, for which distance the track is substantially straight. * * * Going north from a point about eighty feet north of the track, the highway ascends, and the view of the track from the road is obstructed by a stone wall and bank and by the trees up to a point three or four hundred feet north of the track, where again a clear view of the track at the west is obtained.   Upon the day in question the plaintiff's intestate was driving down the hill from the north.   He was a careful driver, was driving a gentle horse, and was sitting upon one of the string-pieces of a wood-rack upon his wagon. * * * The wood-rack consisted of two poles or string-pieces running lengthwise of the wagon and resting upon the bolsters, and connected with cross pieces, and having upright stakes for holding wood, and is similar to that ordinarily used by farmers in drawing wood.   Sitting in so low a position, one could not, in passing along that part of the road where the view of the track is obstructed by the wall and bank, so easily obtain a view of the track as when seated upon the raised seat of an ordinary wagon, nor could one seated as the deceased was so easily control his horse when frightened as when sitting upon an ordinary wagon seat.   When the deceased was at the point before described on the hill, three or four hundred feet north of the track, the train was not

in sight. Whether or not, after passing that point, and while the track was not in sight, he heard the whistle for the crossing, did not appear. The whistle as blown for this crossing could have been heard on that day by a person on the highway and as far from the engine as the deceased was at the time the signal was blown. The wind at this time was blowing from the east. If the deceased heard the signal blown for this crossing, it would have been reasonable for him to have believed that it was not for the crossing over which he was to pass, but for the next crossing, nearly a mile west of this crossing. When the deceased reached the level space at the foot of the hill and saw the near approaching train, his horse became frightened and unmanageable, and ran toward the track. The deceased made every endeavor to stop his horse, and nearly succeeded in doing so at a point very near the track, when the horse, frightened by the engine, sprang in front of the engine, and the deceased was struck and killed."

Evidently the question of contributory negligence is mainly a question of fact. It is difficult to see in the record any legal question in this branch of the case.

We may say generally, that the law requires every one to use ordinary care to avoid danger at a railroad crossing. What will be ordinary care depends upon the degree of danger. For a man in the perilous condition in which the deceased was placed, nothing less than every possible effort to avert an accident will amount to ordinary care; making due allowance, of course, for excitement, misjudging, etc. So far as we can judge from the facts stated, there is no reason to suppose that the deceased did not come up even to this standard; at least, we see no fact in the case which, when carefully considered, is inconsistent with this degree of care.

Negligence, if any existed, was in permitting himself to be placed in that position. It may have existed, but its existence is not so clear as to justify us in saying, as matter of law, that it existed. Let us briefly notice the claims of the defendant's counsel. The first suggestion is that it is an

unusual occurrence, and " that the reason of its happening lay in the fact that the driver was so seated as to have no control of his horse." This assumes that using such a wagon, seated in the manner described, was negligence *per se.* Manifestly this cannot be so. The significance of this fact must depend largely upon the attending circumstances related to and bearing upon this question. He was in the business of hauling wood; he used such a vehicle as was ordinarily used for that purpose; he was as conveniently seated as others in the same business were; he had a gentle horse; the train was an extra one, closely following a regular passenger train; we may suppose that he had the latter in mind but not the former; and we cannot assume that he had any knowledge of the approaching train until about the time he was seen by the fireman trying to control his horse. Upon these facts it is quite clear that the question,—was it reasonable for him to use such a vehicle in the manner he did, was a question of fact. Perhaps most men would have come to the same conclusion that the trial judge did. But however this may be, we cannot say that the judge committed a legal error in the conclusion to which he came.

Again, counsel say:—" As soon as Mr. Bates knew the train was coming, it was his plain duty to stay where he was, or at least to take his horse by the head if he approached nearer. He did neither of these things. After he passed the stone wall, which hid the view from his low seat, and saw the engine coming, he drove on some thirty feet towards the track, and got within fifty feet of it, yet continued to sit in the same awkward position, in which he could have no pull on the reins, and could exercise no proper control of his horse." How do we know when Mr. Bates first saw the train coming? How do we know that it was in his power to change his position, so as to get better control of his horse ? Unfortunately the record does not answer these questions.

In the next place, it is said that " the engineer's whistle gave the deceased half a minute's warning." That is in-

consistent with the record, for that leaves it uncertain whether he heard it.

Lastly, it is said that he was guilty of negligence if he did not, as he drew near to the crossing, stop and listen for a train. Of the facts relating to this suggestion we know but little. The trial judge had a much better opportunity to judge of that matter than we have. As he has not found negligence, we cannot.

There is no error in the judgment appealed from.

In this opinion ANDREWS, C. J., and SEYMOUR, J., conconcurred.

TORRANCE, J., (dissenting.) The trial court, after having found certain facts bearing upon the question of the negligence of the defendant and the contributory negligence of the deceased, expressly finds that the deceased was not guilty of contributory negligence, and that the accident "was caused by the defendant's negligence in having failed to blow the whistle within eighty rods of the crossing."

In the opinion of the majority of this court the finding as to the absence of contributory negligence on the part of the deceased, is regarded as a conclusion of fact, which this court cannot review, and in that opinion I concur. In that opinion this view is also taken of the finding as to the negligence of the defendant, and from this I dissent.

The conclusion of the trial court as to contributory negligence is based upon a number of facts of such a nature that, with regard to the question of what a prudent man would or would not do thereunder, the law can lay down no specific rule in advance. It can only say to all persons—you must act as a prudent man would act under the like circumstances. It cannot inform us what a prudent man ought to do or refrain from doing under all or any given circumstances. In most cases involving the question of negligence it cannot in advance tell what its ideal prudent man ought or ought not to do. It contents itself with warning the trier that the standard he adopts ought to be

that of the prudent man, but it leaves the trier to say what that standard is. Now this precept to act as a prudent man acts can hardly be called a rule, guide or measure of conduct, in any just sense of those terms. It is as vague as an exhortation to do the best you can under the circumstances. But it is from the nature of the case the best the law can do.

In most cases of negligence therefore, where, as is usual, the facts bearing upon that question are numerous, complicated and peculiar to the specific case, the law necessarily leaves to the trier, not only the question what did the defendant do or omit to do, but the further question also, what is the standard or measure by which his liability for his acts or omissions in a given case shall be determined.

" When the judge decides that a want of due care is not shown, he necessarily fixes in his own mind the standard of ordinary prudence, and, measuring the plaintiff's conduct by that, turns him out of court, upon his opinion of what a reasonably prudent man ought to have done under the circumstances. He thus makes his own opinion of what would be generally regarded as prudence, a definite rule of law." *Detroit & Milwaukee R. R. Co.* v. *Van Steinburg*, 17 Mich., 99.

This is precisely what the law in most cases must leave to the trier, whether such trier be one man, as under our practice he may be, or a jury of twelve men.

The question of contributory negligence in the case at bar is clearly one of this character, to be determined by the trier, and his determination as such is as conclusive upon this court as the verdict of a jury would be in like circumstances.

But with regard to the question of the negligence of the defendant, the case on the finding is widely different. It must be borne in mind that the conclusion of the trial court in this case as to the negligence of the defendant is based solely upon one fact, namely, failure to sound the whistle within the eighty rod limit. It is true that other facts are found, but the conclusion aforesaid does not profess to be, and is not, based upon them.

The train was properly manned; it was running at a lawful rate of speed, on a road and at a time where and when the defendant had a right to run it.   It is not found or suggested that the engineer and other servants of the defendant on this train were inattentive or careless in any respect whatever, save in this, of sounding the whistle.   No other fact is found or suggested which shows, or tends to show, any want of care or attention to duty on the part of the defendant, save in the one particular before mentioned.   Had the whistle been sounded within the eighty rod limit, all the other facts in the case remaining as the court finds them, the trial court would undoubtedly have found no negligence.

It is not found that no signal was given by the whistle, or that it could not be heard, and heard distinctly, at the crossing, and along the highway near the crossing, nor is the finding based on any such state of facts.   It is expressly found that the whistle could be so heard and that the bell was continuously rung.

The belief of the deceased that the whistle was sounded at a greater distance than it in fact was sounded, if he had any such belief, and the other facts found, had a bearing on the question of contributory negligence perhaps, but the conclusion in question is not based upon any of those facts. If the whistle had been blown within the eighty rod limit, the trial court would have found no negligence, notwithstanding the existence of all these other facts.

It may be thought however that the further finding of the court, that a "due regard for the safety of persons passing said highway toward and over said crossing, requires that the engine whistle upon approaching trains be blown within eighty rods of said crossing," is a finding of fact bearing upon the conclusion of negligence.

To say that public safety requires the whistle to be sounded within the eighty rod limit, is but another way of saying that the law requires this to be done.   Even if public safety did require it, the defendant was not liable for not doing what public safety required, unless it failed to perform some duty

which the law imposed upon it. So that after all the decisive question in the case was—does the law require that the whistle be blown precisely within the eighty rod limit, and not elsewhere, on penalty of being found negligent; and this, of course, is a question of law and not of fact.

Similar findings in other cases have been so construed by this court, and have been reviewed and set aside. In *Bailey* v. *Hartford & Conn. Valley R. R. Co.*, 56 Conn., 444, the trial court found "that reasonable care by the defendant under the circumstances required it to have given a signal by whistle or otherwise eighty rods from the crossing, and to have occasionally rung its bell, and not blown its whistle, along the line of the parallel highway, until the crossing was reached;" but this court found no difficulty in holding this to be a conclusion of law, which it could and did review. So in *Beardsley* v. *City of Hartford*, 50 Conn., 529, the trial court found that travel along the sidewalk in question was endangered by the basement opening, and that public safety required the city to enclose it, yet this court reviewed and set aside that conclusion. The findings in the two last named cases seem to be quite as strong in this respect as the one in the present case. Other cases to the same point might be cited. The conclusion of the trial court therefore, in the case at bar, on the question of negligence, seems to be based entirely upon the failure to blow the whistle within the limits prescribed by the statute.

Now whenever the liability of a defendant depends upon the doing or failure to do some one specific act, as in this case, and the trier finds the existence of such act or omission, his conclusion as to the existence thereof is final, but his finding of liability therefrom depends upon whether in so doing or omitting to do the defendant violated any duty, and that is always a question of law.

In *Gallagher* v. *N. York & N. Eng. R. R. Co.*, 57 Conn., 442, the trial court made a finding of facts, and expressly found that the defendant was negligent; but this court reviewed that conclusion and came to an opposite one. In regard to the finding of negligence in that case, this court said—" It is

predicated entirely upon the want of a fence between the two railroads. Upon this part of the case the decisive question is, whether it was the duty of the defendant to erect such a fence, and this is a question of law." In *Williams* v. *Town of Clinton*, 28 Conn., 264, it is said:—" The opinion of the court may properly enough be taken when the case turns upon the legal effect of a single fact." In *Beardsley* v. *City of Hartford*, before cited, the trial court found the facts, and expressly found negligence on the part of the city in not fencing the basement opening, and no contributory negligence on the part of the plaintiff, yet this court reviewed that conclusion of negligence, and held that it depended upon the further question whether any duty rested upon the city to fence the opening, and that was a question of law. In *Bailey* v. *Hartford & Conn. Valley R. R. Co.*, supra, the trial court made a finding of facts, and further found that in not sounding its whistle eighty rods from the grade crossing, and in first sounding it where it was sounded, the defendant was guilty of negligence. This court however reviewed that conclusion, and held that in doing what it did, under the circumstances stated, the defendant was not guilty of negligence.

The case at bar, upon the point now in question, comes I think within the principle of the cases cited. Suppose the trial court, finding all the other facts in the case just as it has done, had found that the whistle was sounded at the whistling post within the eighty rods, and then had found that the accident was caused by the negligence of the defendant in failing to blow the whistle within forty rods of the crossing, can there be any doubt that this court could review such a conclusion? And if another trier, on a similar state of facts, holds the defendant liable for not blowing the whistle at ninety rods, is this court prepared to say it cannot review that conclusion? Upon principle as well as upon authority, therefore, I think the conclusion of the trial court upon the question of the negligence of the defendant, is one which this court can review.

The question then is, did the court below adopt the cor-

rect rule as to the duty resting upon the defendant? Unless this court is prepared to hold that the statutory duty to blow the whistle within the eighty rod limit is imperative under any and all circumstances, then it seems to me the trial court did not adopt the true rule. In *Bailey* v. *Hartford & Conn. Valley R. R. Co.*, before cited, this court said:—" The statute (Gen. Statutes, § 3554,) directs that the engineer of every train shall, within eighty rods of any grade crossing, sound the whistle or ring the bell. This is required that all persons who are about to cross the track at the grade crossing may have notice that the train is coming. Obviously such notice should be given at such place and by such means as will be most likely to accomplish the object which the statute had in view. * * * If by reason of curves in the railroad, or by reason of high bluffs on either side, the signal when given at the distance of eighty rods from the crossing is not likely to be heard by persons near the crossing, but when given at a distance of forty-five rods is certain to be heard by such persons, then by every rule of good sense the signal, if to be given but once, should be given at the latter distance and not at the former. To argue the other way is a plain 'sticking in the bark.' " The majority opinion in the present case seems to take the same view of the law.

This then is the rule of law as held by this court, namely, that it was the duty of the defendant in the case at bar to sound the whistle at such place as would under all the then existing circumstances be most likely to give ample notice of the approach of the train to all who were about to use the crossing.

Now apply this rule to the facts in this case. The train was running at the rate of forty miles an hour. The whistle signal was blown when the train was distant from the eighty rod limit about four hundred feet. The bell was rung thence continuously till the train passed the crossing. While the whistle was sounding the two long and two short blasts, the train must have passed over a quite considerable part of the four hundred feet. The signal was loud enough

to be plainly heard at the crossing, and along the highway where the deceased was driving. The train passed over the space between the crossing and the point where it first began to sound the signal in about thirty seconds. It passed over the distance between the whistling post and the crossing in about twenty-three seconds. In blowing the whistle where it was blown, persons on the highway near the crossing had notice of the approaching danger some six or seven seconds earlier than they would have had if it had been blown at the whistling post. Surely with an adverse wind and this high rate of speed, a warning of thirty seconds rather than twenty-three seconds is evidence of attention and care rather than of negligence.

Adopting the language of the court in *Bailey* v. *Hartford & Conn. Valley R. R. Co.*, supra, "to call such an act when done in such a manner, negligent, seems a misapplication of terms." Under the rule laid down by this court the defendant was clearly not negligent. Under the rule laid down by the trial court the defendant was negligent and would have been negligent if it had blown the whistle at any point outside of the eighty rod limit, however near, without regard to the speed of the train, the condition of the weather or any other circumstance whatever.

The case at bar is "a sad case, and appeals powerfully to one's sympathy, but we must not allow it to become an occasion of injustice. The defendant is entitled to have the law fairly and impartially administered." *Nolan* v. *N. York, N. Hav. & Hartford R. R. Co.*, 53 Conn., 476.

In holding the defendant liable for full damages, I think the trial court committed an error in law, and that the judgment should be reversed.

LOOMIS, J., concurred in this opinion.