EDWARD ROWEN, ADMINISTRATOR, *vs.* THE NEW YORK, NEW HAVEN & HARTFORD RAILROAD COMPANY.

New Haven and Fairfield Cos., April T., 1890. ANDREWS, C. J., CARPENTER, LOOMIS, SEYMOUR and TORRANCE, Js.

The act of 1889 (Session Laws 1889. Ch. 157) provides that " in every action of tort in which the defendant suffers a default and there is a hearing in damages, such hearing shall be by the jury, unless the defendant shall have given notice of his intention to suffer a default to the clerk of the court within thirty days after the time fixed by law for

closing the pleadings shall have expired." Held not to apply to an action pending when the law was passed, but in which the thirty days had expired before the act went into effect.

A statute should never have a retroactive effect given it by construction, unless it is required by its express terms or by clear implication.

Under ordinary circumstances it is not the duty of a railroad engineer, upon approaching a highway crossing, to both blow the whistle and ring the bell; but notwithstanding an order of the railroad commissioners dispensing with the blowing of the whistle, it is yet his duty to blow it if necessary to prevent accident and if the exercise of reasonable care requires it.

The principle is well settled that if a plaintiff has been guilty of a want of ordinary care, contributing to the production of an injury, he cannot recover, although the defendant has been guilty of gross and culpable negligence, if the act was not intentional and wanton.

[Argued April 24th—decided September 12th, 1890.]

ACTION by the plaintiff, as administrator of the estate of Catherine Rowen, deceased, for her loss of life through the negligence of the defendant railroad company ; brought to the Superior Court in Fairfield County, and heard in damages, after a default, by the court (*J. M. Hall, J.*) Nominal damages assessed, and appeal by the plaintiff. The case is fully stated in the opinion.

*R. E. DeForest*, with whom was *J. H. O'Rourke*, for the appellant.

*G. Stoddard* and *W. D. Bishop, Jr.*, for the appellee.

SEYMOUR J. This action was brought to the Superior Court on the first Tuesday of March, 1889, when the parties appeared, and it was continued, without answer, till October 17th, 1889, when the defendant suffered a default and moved for a hearing in damages. The motion was allowed, and the action came to the December term, 1889, of the court. The defendant gave no notice of its intention to suffer such default to the clerk of the court, within thirty days after the time fixed by law for closing the pleadings, or at any other time. Before the cause was reached for trial the plaintiff claimed the right to have the damages on the hear-

ing upon the default assessed by a jury, pursuant to the pro-
visions of chapter 157 of the Public Acts of 1889, and filed
his written motion to that effect.  The court denied the
motion and itself proceeded to a hearing and rendered judg-
ment in favor of the plaintiff to recover nominal damages
only, which it assessed at fifty dollars.  The plaintiff claims
that the court erred in refusing to allow his motion for a jury
and in holding that the statute referred to did not apply and
entitle him to a jury upon such hearing.

The usage of our courts, founded upon uniform practice
and statutory requirements, to assess damages upon a hear-
ing after a default, without the intervention of a jury, has
been so recently stated in *Lennon* v. *Rawitzer*, 57 Conn.,
583, as to require no re-statement.

In 1889 the General Assembly passed an act providing
that " in every action of tort in which the defendant suffers
a default and there is a hearing in damages, said hearing in
damages shall be to the jury unless the defaulting defendant
shall have given notice of his intention to suffer such default,
to the clerk of the court in which such action is pending,
within thirty days after the time fixed by law for closing
the pleadings in such action shall have expired."  Session
Laws of 1889, ch. 157.   This act went into effect August 1st,
1889, as provided by chapter 256 of the public acts of that
year.

The time fixed by law for closing the pleadings in the
action expired at the end of thirty days from the first Tues-
day of March, 1889.  If the above act is applicable the notice
to suffer a default should have been given within thirty days
thereafter and several weeks before the act went into effect.
It was too late when the act became effective for the de-
fendant to give the notice required in order to entitle itself
to be heard in damages by the court.

In other words, when the suit was brought and up to Au-
gust 1st, 1890, the defendant was entitled by law, upon a
default, to have a hearing in damages before the court.
The new act went into effect August 1st, and although then
too late for the defendant to observe its requirements as to

notice of default, yet, the plaintiff says, it was not too late for the rest of the act to be operative upon the case and compel the defendant to have its damages assessed by a jury.

Is the statute thus retroactive ? There is no provision in the act itself that it shall affect pending suits. As a rule of construction section one of the General Statutes declares that the passage or repeal of an act shall not affect any action then pending.

Does the language of the act in question indicate an intention contrary to this general provision? It went into effect, as already stated, August 1st. If it can fairly be held to have been intended to affect suits then pending in which the thirty days after the time fixed by law for closing the pleadings had not then expired, yet it will not be presumed, without very strong reasons for the presumption, that the legislature intended to affect cases in which it was impossible, for reasons already stated, to comply with the conditions imposed. Such an intention, if existing, should not be left doubtful. In view of the rule of construction expressly imposed by the statute, the language should necessarily carry an intention to act upon pending suits, or pending suits should in terms be made subject to it.

" One of the firmly established canons for the interpretation of statutes declares that all laws are to commence in the future and operate prospectively, and are to be considered as furnishing a rule for future cases only, unless they contain language unequivocally and certainly embracing past transactions. The rule is one of such obvious convenience and justice as to call for jealous care on the part of the court to protect and preserve it. Retroaction should never be allowed to a statute unless it is required by express command of the legislature or by an unavoidable implication arising from the necessity of adopting such a construction in order to give full effect to all its provisions." *Smith* v. *Lyons*, 44 Conn., 178. Neither express command nor unavoidable implication requires the construction which the plaintiff contends for in this case.

The next error assigned is, that the court admitted in evidence certain extracts from the records of the city of Bridgeport, against the plaintiff's objection, which were not admissible. As the finding stands it is difficult to get at the real merits of this claim. It does not state the purpose for which the evidence was offered nor the precise objection made to it. It only recites what took place when it was offered, quoting from the stenographer's minutes.

The plaintiff claims that the records were offered for the purpose of showing the action of the railroad commissioners in excusing the defendant from sounding the statutory signals. The defendant claims that they were offered to prove the action of the city respecting such signals, preliminary to the action of the railroad commissioners, as well as the action of the commissioners based upon it; and that, inasmuch as the commissioners act in such matters upon the petition of the mayor and common council of cities, the records were, at any rate, admissible to show what the city had done.

The defendant further claims that, in taking his objection, the plaintiff did not discriminate between the admissible and inadmissible parts of the records, if any part is inadmissible, but took his objection to the whole; that if a specific objection had been taken, that the acts of the railroad commissioners could not be proved by the records, and the court had sustained the objection, the records of the railroad commissioners, which could easily have been obtained, would have been introduced. And finally the defendant claims that the entire record as offered, was, at the suggestion of the plaintiff's counsel, received in evidence subject to his objection, which objection he at no time thereafter renewed or pursued, and that the Superior Court never passed upon it.

It appears from the finding that in introducing the evidence the defendant called for "a record of the action of the city in this application to the commissioners concerning the whistling of locomotives of the New York, New Haven & Hartford Railroad in this city," and proposed to lay it in. The plaintiff's counsel objected. From what follows in the finding it is impossible to decide satisfactorily whether any

distinct objection was taken to it as evidence of the action of the commissioners or whether it was objected to for any and all purposes. After several questions had been asked and objections taken the plaintiff's counsel proposed to have the book laid in and to let the court take it subject to his objection. To this the defendant's counsel assented. " Thereupon the records of said city * * * were received and considered by the court. The counsel for the plaintiff at no time thereafter suggested or pursued any objection to said testimony."

It rather seems to us, after careful consideration, that no such specific objection appears to have been taken to the inadmissible part of the evidence and that no such ruling was had upon it, as the rules require before it can be reviewed by this court. At the same time it is so easily possible that this view of the matter might do the plaintiff injustice, that if it were the turning point in the case we should adopt it with hesitation, if at all. But it clearly appears upon any careful study of the finding that no harm resulted to the plaintiff by the admission of the evidence and its consideration by the court. Irrespective of the order of the railroad commissioners dispensing with whistling, it was not the engineer's duty, under ordinary circumstances, to both blow the whistle and ring the bell upon approaching a highway crossing at grade. Notwithstanding such order, it was his duty to blow the whistle if necessary to prevent accident and if the exercise of reasonable care required it.

The Superior Court finds that the engineer was not guilty of negligence in omitting to sound the whistle before reaching, and within eighty rods of, the crossing in question, for the reason that he was proceeding with his train at a very moderate rate of speed; that he was ringing the bell on the engine for a distance of at least two hundred and fifty feet before approaching the crossing, (having, as the finding elsewhere shows, whistled for off-breaks and rung the bell at the water stand-pipe, where the engine took water, about fourteen hundred feet from the crossing where the accident happened); that he saw the decedent when distant about

one hundred and fifty feet from where she was standing, and that she was then in a position of safety and he had no reason to suppose, and nothing in her appearance then indicated, that she did not hear the bell and intend to remain where she was until his train passed over the crossing. The court also finds that the engineer was not guilty of negligence in omitting to sound the whistle, from the further fact that the railroad commissioners had previously passed a dispensative order directing the defendant corporation to omit whistling at certain highway crossings, including the one in question.

The first reasons stated by the court are sufficient in themselves and alone to justify the finding, predicated upon them, that the engineer was not guilty of negligence in omitting to whistle ; it being understood, of course, that the court was not undertaking to state an abstract rule but one applicable to the circumstances of this particular case and in reference to the liability of this defendant for damages occurring in consequence of its neglect. That the commissioners had made the order for the omission of whistling, and that it was a reason, also, why the engineer was not to be charged with negligence, did not weaken the conclusiveness of the other facts found, nor was it necessary to the conclusion reached. Had nothing been said about it in the finding and had no attention been paid to it by the court, the fact that the engineer was not negligent in the matter of whistling would have been clearly found, upon evidence unquestionably admissible and appropriate. Then again, no question of ordinary care on the defendant's part arises in this case. The court below expressly finds " that the plaintiff's intestate is chargeable with negligence essentially contributing to and directly occasioning the injuries complained of." Should it be claimed that this finding is made to hinge upon the facts specifically set forth, (a claim not very distinctly sustained by the record,) and that by means of such reference the question of contributory negligence can be converted into a question of law instead of one of fact, yet the

facts stated abundantly justify the conclusion reached. So far, then, as we are concerned, it is a fact in the case that the decedent was chargeable with negligence essentially contributing to, and directly causing, her death.

We need not go outside of our own decisions to discover the necessary effect of this fact. In *Birge* v. *Gardiner*, 19 Conn., 507, the court said :—" The principle is well settled that although a defendant has been guilty of culpable fault or negligence, producing an injury, yet if the act was not wanton and intentional, and if the plaintiff by his own misconduct or neglect, amounting to the want of ordinary care, essentially contributed to produce the result, he cannot recover."

In the case at bar neither the fault nor the negligence of the defendant produced the injury. The negligence of the plaintiff is found by the court to have directly occasioned the injuries complained of. There was no claim that they were produced by any wanton or intentional act of the defendant.

In *Neal* v. *Gillett et al.*, 23 Conn., 437, it was held that " where the defendants were guilty of gross negligence causing damage to the plaintiff, and the plaintiff had been guilty of want of ordinary care contributing essentially to the injury, the plaintiff could not recover." The opinion says :— " For anything this court can see the negligence of the defendants, however gross, might have been entirely harmless but for the plaintiff's own contribution to the combined causes which produced the injury. And so too, for anything this court can see, although the defendants' negligence was gross, and fully adequate to the production of the injury, yet the plaintiff's exercise of reasonable care would have saved him from its consequences."

The cases of *Beers* v. *Housatonic R. R. Co.*, 19 Conn., 566, *Park* v. *O'Brien*, 23 id., 339, *Fox* v. *Glastonbury*, 29 id., 204, and *Nolan* v. *N. York, N. Haven & Hartford R. R. Co.*, 53 id., 461, may be referred to upon this point. Enough however has been quoted to show how thoroughly the rule as to

the effect of contributory negligence is established in this state.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.