RICHARD DUNDON ET AL. *vs.* THE NEW YORK, NEW HAVEN and HARTFORD RAILROAD COMPANY.

Third Judicial District, New Haven, January Term, 1896. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

The power to require a railroad company to station a flagman at a high-way crossing is vested in the railroad commissioners. If a railroad company sees fit, of its own volition, to station a flagman at such a cross-ing, the question whether his absence from his post during the passage of a train constituted negligence upon the part of the railroad com-pany, is one of fact to be determined by the trier upon all the circum-stances in the case.

While a traveler on the highway has the right to rely, to a certain extent, upon an unobstructed passage over a railroad crossing, in the absence of a flagman who was customarily there during the passing of trains, yet the question whether such traveler was guilty of contributory negligence in attempting to cross in the absence of the flagman, is a question of fact for the decision of the trier upon all the evidence in the case.

[Argued January 22d—decided February 7th, 1896.]

ACTION to recover damages for an injury to the plaintiffs' horse and cart, alleged to have been caused by the negligence of the defendant at a highway crossing; brought to the Court of Common Pleas in Fairfield County, and heard in damages to the court, *Curtis, J.;* facts found and judgment rendered for the plaintiffs to recover nominal damages only, and appeal by the plaintiffs for alleged errors in the rulings of the court. *No error.*

The case is sufficiently stated in the opinion.

*Stiles Judson, Jr.,* for the appellants (plaintiffs).

*William D. Bishop, Jr.,* for the appellee (defendant).

FENN, J. The court below, after default, and upon a hearing in damages, found the following facts :—

On February 8th, 1895, the railroad tracks of the defendant crossed at grade a certain highway known as Burr road in the city of Bridgeport. On said day a certain other highway crossing next east of said Burr road, and known as Fairfield avenue crossing, was impassable to travel on the highway on account of certain work being done thereat, under order of the railroad commissioners, for the purpose of separating the grades at that point. On said day and for some time prior thereto, during the progress of the work, the travel was and had been diverted from said Fairfield avenue crossing to said Burr road crossing, resulting in considerable travel passing daily over said Burr road crossing. During the period in which the travel was so diverted over the Burr road crossing, the defendant maintained a flagman at said crossing for the purpose of warning travelers on the highway of the approach of trains, and for signaling approaching trains, whether or not the crossing was safe for them, and said flagman was on duty upon said day. The defendant maintained said flagman at said crossing of its own volition, and not in pursuance of any order of the railroad commissioners of this State.

On the day in question, one Collett, a driver in the employ of the plaintiffs, was leading the plaintiffs' horse, which was attached to a coal-cart loaded with coal, over said Burr road, and was approaching said grade crossing from the south, the railroad tracks at that place running east and west. As said Collett approached said crossing, a regular daily train from the east was due at said crossing. Collett had frequently crossed over said Burr road crossing and was perfectly familiar with it, and knew that a flagman was stationed there, and was accustomed to rely wholly upon the flagman to warn him of the approach of a train. As he was approaching said crossing, at about one o'clock in the afternoon on said day, the wind was blowing and it was also snowing, but there was an unobstructed view up and down the tracks in both directions for a distance on the highway of several hundred feet before he reached said crossing; and at any point in this several hundred feet, a train could have been easily seen for a long distance up and down the tracks. Said Collett, in approaching said crossing, was leading his horse in such a manner that the horse's head was between him and the approaching train. When he had arrived within about twenty-five feet from said crossing he stopped and looked to see whether the flagman was upon the crossing displaying the usual signal of the approach of the train. The flagman was absent. Collett, relying upon his absence as an assurance of safety, led his horse upon the crossing, taking no other precautions whatever to acquaint himself of the approach of the train, which could easily have been seen by him if he had looked in its direction, in ample time for him to have avoided the collision which occurred, as hereinafter stated. As Collett drove upon the tracks the flagman, who then for the first time appeared, shouted to him from the north side of said tracks to warn him of the approaching train, and said Collett drew his horse to the left as quickly as possible after said warning, but too late to avoid the collision, the train striking and demolishing the cart, scattering the coal and injuring the horse so as render it perfectly useless. The flagman came upon said crossing too late to warn

said Collett of the approach of said train. The plaintiffs' property was damaged thereby to the amount of $242.

The court found, upon the foregoing facts, that the defendant was not guilty of negligence, and that the plaintiffs' servant was guilty of contributory negligence.

The plaintiffs claimed that the failure of the flagman to appear upon said crossing in time to warn the plaintiffs' servant, was negligence on the part of the defendant and the proximate cause of the damage sustained; and furthermore, that the failure of the said driver to look in the direction of said approaching train, and his relying solely upon said flagman, did not constitute, under the facts of this case, contributory negligence. These claims the court overruled and rendered judgment for nominal damages only. The plaintiffs thereupon appealed to this court.

The first inquiry which offers itself to us, upon the examination of the record is, does the finding upon the matter of negligence, as relates to the conduct, either of the plaintiffs or the defendant, present any question which, upon the application of the rules laid down in *Farrell* v. *Waterbury Horse R. R. Co.*, 60 Conn., 239, 257, and recognized in many subsequent decisions of this court, we are at liberty to consider. In other words, were the inferences or conclusions of the court below based upon the special circumstances of the case, where the only standard of duty is the indefinite and varying one of the conduct of a reasonable and prudent man under like circumstances, where therefore not only the extent of performance but also the measure of duty, must be ascertained as facts; or did such inferences or conclusions embrace or involve the imposition of some duty upon the plaintiffs, not imposed by law, or the discharge of the defendant from some duty which the law required.

The plaintiffs claim such improper imposition and discharge; that " the failure of the flagman to appear upon said crossing in time to warn the plaintiffs' servant, was negligence on the part of the defendant and the proximate cause of the damage sustained; and furthermore, that the failure of said driver to look in the direction of said approaching

train, and his relying solely upon said flagman, did not constitute, under the facts in this case, contributory negligence."

In reference to the first of these claims it appears, as we have seen, that "the defendant maintained said flagman at said crossing of its own volition, and not in pursuance of any order of the railroad commissioners of this State." In *Dyson* v. *N. Y. & N. E. R. R. Co.*, 57 Conn., 9, 22, this court said: "Nor do we think the defendant was guilty of negligence in not providing at the crossing additional signals to those required by statute. In this State the legislature has assumed the regulation of this matter by providing specifically what signals shall be given of the approach of trains to crossings, and by instructing the railroad commissioners to require other signals at crossings when they shall deem them necessary for the protection of the public. This legislation is exhaustive and defines the whole duty of railroad companies in the matter to which it relates." It is indeed true that the foregoing statement should be read in the light of, and regarded as consistent with, what this court said later in *Bates* v. *N. Y. & N. E. R. R. Co.*, 60 Conn., 259, to the effect, and as stated in the head-note, that in exceptional cases "where the highest degree of diligence may justly be required, a literal compliance with the statute may not be enough." But it is the province of the trial court to determine whether the case before it presents the exceptional features which call for the application of the additional requirement, as demanded by common prudence and the test of the conduct of the man of such prudence.

This brings us to the main ground of the plaintiffs' contention, namely, that the defendant had by its act in establishing a flagman at this crossing, recognized the obligation and assumed the duty of providing such safeguard, and that therefore it was incumbent upon it to faithfully discharge such duty. In support of this contention the plaintiffs cite many cases in other jurisdictions, to the language used in two of which, as quoted in the plaintiffs' brief, we will refer. In *Kissenger* v. *R. R. Co.*, 56 N. Y., 538, 543, the court said:

" Although it is not negligent for a railroad company to omit to keep a flagman, yet if one is employed at a particular crossing, his neglect to perform the usual and ordinary functions of the place may be sufficient to charge the company." In *Burns* v. *Rolling Mill Co.*, 65 Wis., 312, 315, it was said: " When the company had usually kept a flagman at that crossing, those approaching it might well think that no train was near it if no flagman or his signal was seen. The traveler might in this way be lured into danger, when, if no flagman had ever been kept there, he would not have looked for such a signal, but would have looked and listened for other signs of an approaching train."

There is nothing in the language above quoted that we cannot approve and fully indorse. But there is also nothing in such language inconsistent with the view that in such cases there is no fixed rule of law, no exact standard of duty, to be declared by the court, to regulate and control the function and province of a jury, in determining the questions of negligence and contributory negligence. We say the province of the jury, but, as stated in *Farrell* v. *Waterbury Horse R. R. Co.*, *supra* (p. 253), " whether the trier (of the questions of fact) is one man or twelve men makes no difference. If the case is such that the trier and not the law must determine whether the conduct in question is, or is not, that of the prudent man, the conclusion of the single trier upon this point is just as binding and final as that of twelve men." In the case above referred to, as cited by the plaintiffs, *Burns* v. *Rolling Mill Co.* (p. 315), the court said: " It was certainly much more proper to submit to the jury in this case the questions whether the company had ordinarily kept a flagman at this place to the knowledge of the plaintiff, and whether he had not been withdrawn, and whether such withdrawal of the flagman on the evening of the accident was not negligence." The court below decided upon all these matters as being questions of fact, not of law. We think such court was correct in so regarding them, and we do not consider ourselves at liberty to review its conclusions.

The finding of the court that the plaintiffs' servant was

guilty of contributory negligence, was also clearly one of fact. In saying this we recognize fully the correctness of the plaintiffs' claim, that the failure of the flagman whom the plaintiffs' servant knew was stationed upon said crossing and upon whom he was accustomed to rely to warn him of an approaching train, to appear, directly and naturally tended to throw the plaintiffs' servant off his guard and to render him less vigilant than he otherwise would have been. This consideration should have had a material influence with the trial court when passing upon the question of contributory negligence. But we have no reason to judge that it did not. In *Tyler* v. *Old Colony R. R.*, 157 Mass., 336, 340, the court well stated what we hold to be the rule : " If it is customary to have one at a crossing, and he is absent, a traveler has a right to rely to some extent on this fact; but this does not excuse his not looking at all to see if a train is coming, when there are no obstacles to prevent his seeing if he looks." Ap-plying this rule to the facts found, we think not only is the conclusion of the trial court justifiable, but that no other re-sult was possible.

There is no error.

In this opinion the other judges concurred.