AUGUST TESSMER, ADMINISTRATOR, vs. THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Third Judicial District, New Haven, June Term, 1899. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

If a locomotive engineer gives the warning signals prescribed by statute for a highway crossing, he performs his entire duty in that respect, unless peculiar conditions known to him at the time demand further precautions.

The trial court in the present case found the defendant guilty of negligence, solely because its engineer did not sound the whistle constantly between the signal post and a highway crossing, from which a view of the approaching train was obstructed by a building and by a box car on a siding. *Held* that this was error, since there was nothing in these circumstances to take the case out of the general rule and impose any additional duty upon the engineer.

Argued June 20th—decided August 1st, 1899.

ACTION to recover damages for personal injuries resulting in the death of the plaintiff's intestate, brought to the Superior Court in New Haven County and heard in damages by the court, *Prentice, J.;* facts found and judgment rendered for the plaintiff for $1,500 damages, and appeal by the defendant for alleged errors in the rulings of the court. *Error, judgment set aside and case remanded for assessment of nominal damages.*

The case is sufficiently stated in the opinion.

*Harry G. Day* and *Benjamin I. Spock,* for the appellant (defendant).

*Charles S. Hamilton* and *Oswin H. D. Fowler,* for the appellee (plaintiff).

TORRANCE, J. The material facts found may be summarized as follows: The Ward street crossing, where the accident occurred, is in a populous part of the borough, and is quite largely used for public travel in teams and on foot. It crosses

the railroad at right angles, over two main tracks and two side tracks easterly of the main tracks. On the west side of the main tracks are two side tracks reaching from the Quinnipiac crossing next north of Ward street to within a short distance north of Ward street. At the northwest corner of the Ward street crossing and the defendant's location, and close to the westernmost of the two last mentioned side tracks, is a large building used as a feed store.

By reason of fences and buildings in the neighborhood of the crossing, a person approaching it from the west is, for several hundred feet, and until he passes the corner of the feed store and is within thirty feet of the west main track, unable to see any portion of the main tracks north of the crossing, or to hear the approach of a train from the north, or the sound of its bell, or even its whistle at the Ward street crossing whistling post, unless the wind is favorable.

At the time of the accident a box freight car, as was frequently the case, stood in front of the feed store not many feet from the end of the west siding. This car shut off all sight of the tracks north of the crossing, to one approaching the crossing from the west, until he had arrived within twenty feet of the west main track, where about two hundred feet of the main tracks north of the crossing could be seen.

Warning signs as required by law were maintained at the crossing, but no gates nor electric signals, no flagman nor other special safeguards were there at this time, nor have any such special safeguards been ordered by the railroad commissioners to be kept there. The crossing was "otherwise in good structural condition." These facts made the crossing a dangerous one, and were well known to the defendant and to its officers and servants on the train at the time of the accident.

The train was a south-bound fast express, not stopping at Wallingford, and passing through the borough at the rate of about fifty miles an hour. The locomotive whistle was sounded and its bell rung for the Ward street crossing, as required by the statute.

At the time of the accident it was light, the weather was clear, and a light wind was blowing from the south.

Upon the facts found the trial court reached the conclusion that the negligence of the defendant directly caused the death of the plaintiff's intestate. This negligence is specifically found to consist in its failure, under the circumstances disclosed by the finding, to keep the whistle " constantly " sounding between the whistling post and the crossing. ·That this failure is the only act of negligence found, and the only one upon which the judgment is based, is quite apparent from the finding. Negligence in respect to all other matters is negatived by the finding. The train was running at a lawful and customary rate of speed, the crossing signals were given, and warning signs were up at the crossing, as required by statute, and the crossing " structurally " was in good condition. It is expressly found that the defendant was not negligent in failing to keep at the crossing certain special statutory safeguards, and upon the facts found no other conclusion upon this point was permissible. *Dyson* v. *New York & N. E. R. Co.*, 57 Conn. 9, 23. After the engineer saw the team he did all that lay in his power by way of warning or otherwise to avoid the collision and to mitigate its effects. In short, it is found that the only thing, at this time and place, constituting negligence on the part of the defendant, was the failure of the engineer to keep the whistle sounding from the whistling post to the crossing.

The plain inference from the finding is, that if this had been done, all the other facts found remaining the same, the conclusion reached by the trial court as to the negligence of the defendant would have been the other way.

In reaching its conclusion the court held, as matter of law, that a specific duty rested upon the defendant to keep the whistle sounding from the post to the crossing ; and one of the important questions in the case is whether any such duty rested upon the defendant. If it did, the conclusion in question is right, for it is clear that the defendant performed no such duty; if no such duty rested on it, the conclusion is wrong, for it rests wholly upon the failure to perform this specific duty.

We are of opinion that no such duty rested upon the defendant. The negligence for which the defendant was held responsible by the trial court was the negligence of its servant, the engineer, in failing to give the crossing signals as required by law. If he was not negligent in that behalf, it follows that the defendant was not negligent. The question, then, is whether the law imposed upon the engineer the duty to keep the whistle sounding in the manner required by the trial court. The law imposes upon the engineer of a train, about to pass over a public grade-crossing, the duty to give certain warning signals, and a negligent failure on his part to perform that duty may subject him to grievous liability both civil and criminal. He has to perform this duty under circumstances which leave but little time for thought and reflection. For these reasons the law, as far as is possible, should make his duty plain and clear, to the end that he may know precisely what is required of him. The permanent conditions which detract from the effectiveness of the signals given, will vary with the location and surroundings of the crossing ; and the temporary conditions, atmospheric or otherwise, having the same effect, will greatly vary from time to time ; but the duty of the engineer ought not to vary to suit these varying conditions. *Bailey* v. *Hartford & C. V. R. Co.*, 56 Conn. 444, 460. The duty of the engineer, with respect to the giving of grade-crossing signals, can only be made plain and clear by statute, and accordingly the legislature has by statute defined what he shall do in that behalf, and the manner of doing it. The statute (§ 3553) provides, in effect, that the engine shall have attached to it a bell of a prescribed weight, and a suitable steam whistle, both to be in good working order. It further provides (§ 3554), in effect, that the engineer shall commence sounding the bell or steam whistle when the engine shall be approaching and within eighty rods of any public crossing, and shall keep the bell or whistle occasionally sounding until the engine has passed the crossing. It further provides (§ 3557), in effect, that before the engineer is permitted to drive any engine upon a railroad, he shall be furnished with a printed copy of the sections which define

his duty as to grade-crossing signals, and that he shall make oath that he will faithfully comply with their provisions.

The practical construction put upon § 3554 has been the common sense one, that the whistle shall be sounded at the eighty rod point and the bell shall be rung thereafter until the engine passes the crossing. *Bates* v. *New York & N. E. R. Co.*, 60 Conn. 259, 266. We think § 3554, as thus construed, prescribes and defines the entire duty of the engineer with respect to the signals to be given by him, under all ordinary circumstances, when his engine is approaching and is about to pass over a public grade-crossing. There may be in some cases of this kind special facts and circumstances which, if known to the engineer, would require him to do more than comply with the provisions of § 3554, but these cases will be exceptional and rare, and they are such as cannot from their very nature be provided for by statute. Some of these exceptional cases, where more than literal compliance with the statute might be required of the engineer, are suggested in the opinion in the case of *Dyson* v. *New York & N. E. R. Co.*, 57 Conn. 9, 22, and others readily suggest themselves. Outside of such exceptional cases, however, the engineer who complies with the statute performs his entire duty with regard to warning signals. "In this State the legislature has assumed the regulation of this matter by providing specifically what signals shall be given of the approach of trains to crossings, and by instructing the railroad commissioners to require other signals at crossings when they shall deem them necessary for the protection of the public. This legislation is exhaustive and defines the whole duty of railroad companies in the matter to which it relates." *Dyson* v. *New York & N. E. R. Co.*, *supra*, p. 23.

In the case at bar it is found that the engineer fully complied with the requirements of the statutes as to signals, and, after he saw the team, did all he could to avoid the collision; and this being so we think the engineer performed his full duty towards the intestate and should not be charged with negligence.

There is nothing in the special facts and circumstances

found which should make this case an exception to the general rule. It is found that the presence of the box car, in front of the feed store, made the crossing, on the day in question, to the intestate and her mother, a specially dangerous one because it hindered or wholly prevented them from seeing or hearing the approaching train; but it is not found that the engineer knew that the box car was there, although he knew one was there frequently. But if we concede that he knew that one was there at the time of the accident, we think his duty did not vary with the presence or absence of the car at that point.

It is also found that owing to the existence of fences, buildings and cars at and about this crossing, persons in the position of the intestate and her mother could not hear the signals when the wind was unfavorable; but it is not found specifically that the wind was so unfavorable, at the time in question, that the signals could not be heard at that point, or that the engineer knew this. It is only found that a light southerly wind was blowing, and that the intestate and her mother, though attentive, did not hear the signals till they passed the box car. These are the main facts relied upon to take the case out of the general rule, and they are not sufficient for that purpose. We are of opinion that the facts relied upon did not impose upon the engineer the additional duty which the court required of him.

In this view of the case it is unnecessary to pass upon the other errors assigned.

There is error, the judgment of the Superior Court is set aside and the case remanded for the assessment of nominal damages.

In this opinion the other judges concurred, except HAMERSLEY, J., who dissented.

HAMERSLEY, J. (dissenting). A railroad company whose track crosses a highway at grade is liable for want of care while using the highway, the same as every one else who uses the way. It is bound to exercise the same ordinary care

incumbent on every traveler. It has no immunity which excuses it from a less degree of care when about to cross an ordinary road, than if its road was of the latter description. *Beers* v. *Housatonic R. Co.*, 19 Conn. 566, 576. The care imposed by law upon railroad and other travelers increases with the dangers of the crossing. The failure to use this care is negligence. If the failure arises from not doing appropriate acts, or not making appropriate orders in respect to the general use of a highway at a particular crossing, the negligence is ordinarily the direct negligence of the corporation; if it arises from the conduct of an engineer under the peculiar circumstances of the case, it is the negligence of a servant for which the railroad is responsible.

Reasonable care in the use of a country highway is not reasonable care in the use of a city street. "The requirement of vigilance is to be measured by the total of danger." *Andrews* v. *New York & N. E. R. Co.*, 60 Conn. 293, 298. To run a train at a high rate of speed through inhabited parts of a city, without special care to see that the track is clear, is negligence. *Daley* v. *Norwich & W. R. Co.*, 26 Conn. 591, 595. It goes without saying, that to run a train at the rate of fifty miles an hour upon a city street, unless that portion of the street is for the time being exclusively appropriated by proper gates or otherwise for the railroad use, is negligence. It is doubly negligence if the crossing be so situated that an approaching train cannot be seen, and its signals of approach are insufficient and uncertain.

It is said that when the State requires certain precautionary measures to be taken and authorizes the railroad commissioners to require others, it inferentially relieves the railroad from all other care. Such a claim is wholly untenable. Suppose the State should say: No person shall recover for injuries done by railroad companies in the operation of their trains. Would such a law be within the power of the legislature? Would it be any different in principle, if the State should say: No damages shall be recovered unless the injurious act is done in disobedience of State regulations.

This claim is based on a total misapprehension of the pur-

pose and justification of such regulations. They are police regulations to prevent, as far as practicable, the occurrence of injuries ; they have no relation to the rights of the injured party, unless it be by operation of the rule that a person using a highway in violation of police regulations is *prima facie* in the wrong. The legislation is preventive; so far as it affects the rights of injured parties it may be cumulative, but is not restrictive. The legislature says : You shall do certain things for the protection of human life ; it does not say : Do those things and you may destroy life at pleasure. Such a claim is not justified by the unnecessary and unguarded *dicta* in *Dyson* v. *New York & N. E. R. Co.*, 57 Conn. 9, 23. These *dicta* were to a certain extent modified by other portions of the opinion ; and have been substantially overruled in several cases. *Bailey* v. *Hartford & C. V. R. Co.*, 56 Conn. 444, 458 ; *Rowen* v. *New York, N. H. & H. R. Co.*, 59 id. 364, 370 ; *Bates* v. *New York & N. E. R. Co.*, 60 id. 259, 267. In the case last cited the court says : " Obviously the statute was not designed to define and limit the duty of railroad companies. They cannot do less than the statute requires ; there are times and occasions when they may properly be required to do more." And the dissenting opinion, by TORRANCE, J., also repudiates the *dicta* in the *Dyson* case as relieving the railroad from the use of ordinary care. "It was the duty of the defendant in the case at bar to sound the whistle at such place as would under all the then existing circumstances be most likely to give ample notice of the approach of the train to all who were about to use the crossing." p. 276. Clearly, under this rule, it is negligence not to repeat the sounding, when under existing circumstances such repetition is necessary to give ample notice.

I am confident that these propositions cannot be gainsaid : 1. The duty of a railroad company in the use of a highway crossing at grade involves the use of ordinary care to avoid injury to other travelers, the degree of care increasing with the dangerous nature of the crossing. 2. The legislation providing general regulations is preventive, defining duties to the public, but not taking away rights of individ-

uals who may be injured by actual negligence. 3. Driving a train at the rate of fifty miles an hour across a highway in the most populous part of a city or borough is necessarily negligence, unless steps are taken to effectually guard against any other use of the highway while the train is passing. 4. The failure to use, in approaching such a crossing, every means of notice that is in fact necessary to give ample notice of a train's approach, is negligence. 5. No general regulations by the legislature, and no failure to make regulations by railroad commissioners, can be so construed as to take from those who have been injured by the actual negligence of a railroad company their right to "remedy by due course of law" for the injury done them. The case at bar comes within these propositions, and the judgment should therefore be sustained.

I understand, however, that the majority of the court treat these questions as excluded from consideration by the finding of the trial court; because the trial judge puts his conclusions of negligence solely on the personal conduct of the engineer in view of the exigencies of that particular occasion, and puts the personal negligence of the engineer solely on the fact that he did not continue sounding the whistle until the crossing was reached; and found no other ground of negligence. I must dissent from this view; it seems to me that it is too narrow a treatment of the finding; that the trial judge distinctly finds facts in accordance with the allegations of the complaint, from which the negligence of the corporation follows as a necessary legal conclusion. This is sufficient to support the judgment, notwithstanding the trial court may have erroneously treated the negligence as personal to the engineer, and, as the reason for its judgment, specified a portion of the facts insufficient of themselves to support the correct conclusion drawn. A sound conclusion is not nullified by an insufficient reason. *Supples* v. *Cannon*, 44 Conn. 424, 431; *Thresher* v. *Stonington Savings Bank*, 68 id. 201, 205.

The personal duty of an engineer in sounding signals may be determined by statute and the orders of his master, so that he may not be liable in case of obedience, unless an emergency

occurs where he must be the judge. But whether the engineer is personally liable or not, the corporation is liable if it fails to take such measures in respect to a peculiarly dangerous crossing as are in fact necessary to its use of the highway with reasonable care.

I think there is no error in the judgment of the Superior Court.