PRATT, READ AND COMPANY ET AL. *vs.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

First Judicial District, Hartford, May Term, 1925.

WHEELER, C. J., BEACH, CURTIS, KEELER and MALTBIE, Js.

A charge to a jury, frequently delivered under the most pressing conditions, cannot be expected to be as accurate in its instructions upon legal propositions as the opinions of a court of last resort, and the true test to be applied to it is not whether it is free from technical flaws or even from inexact, inadvertent or contradictory statements, but whether, as a whole, it fairly presents the case to the jury in such a way that injustice under the established rules of law is not done to either litigant.

In the present case, the erroneous instruction that the plaintiffs must prove all the material allegations of their complaints in which were pleaded several acts of negligence, was not reversible error where, from the charge as a whole, the jury must have understood the correct rule to be that proof of any one of the several acts alleged was sufficient ground for a recovery.

Although the facts claimed to have been proved might have justified the plaintiffs in requesting an instruction upon the doctrine of concurrent negligence, nevertheless, the issue was not necessarily presented by the evidence and, therefore, in the absence of such request, it was not incumbent upon the trial court to so charge of its own motion.

The plaintiffs claimed that the trial court failed adequately to instruct the jury concerning the duty of the defendant's engineer as he approached the admittedly dangerous and much-traveled grade-crossing where the collision between the defendant's train and the motor bus in which the plaintiff R was riding occurred. *Held* that there was no merit to this claim, since the trial court

Pratt, Read & Co. *v.* New York, N. H. & H. R. Co.

properly charged that the engineer's conduct—the speed which he maintained, the warnings which he sounded, and the vigilance which he exercised, including his own admission that he had merely glanced at the crossing and had then fixed his attention upon the track ahead—was to be measured by what a reasonably prudent engineer would have done under the same circumstances.

The fact that it appeared in evidence that the plaintiff corporation, as the employer of the plaintiff R, had paid him through its insurer an award of compensation did not entitle the plaintiffs to an instruction concerning the legal relations thus created between the plaintiff corporation and its insurer; it was sufficient for the trial court to explain that the payment of compensation in no way affected the defendant's liability and that, under § 2 of Chapter 306 of the Public Acts of 1921, any verdict recovered by R would be applied first to the reimbursement of his employer.

The statutes which provide for the sounding of certain warnings at grade-crossings and which authorize the Public Utilities Commission to make orders for additional signals, are not exhaustive and do not define the whole duty of railroad companies in the matter.

A railroad company owes to a traveler at a grade-crossing the duty to exercise reasonable care, which in the ordinary case, will be satisfied by a compliance with the statutory requirements or the orders of the Public Utilities Commission; but if a crossing is more than ordinarily dangerous because of heavy travel, or the presence of obstructions or noises which interfere with sight or hearing, or for any other reason, it then becomes a question of fact for the jury to determine whether, under all the circumstances, reasonable care did not require the giving of additional signals or the maintenance of added precautions.

The fact that the Public Utilities Commission, after a hearing, has ordered, or has refused to order, additional signals at an unusually dangerous crossing, may be taken into consideration by the jury in determining whether reasonable care was exercised; but such rulings by the Commission are not of conclusive, or even presumptive, force.

A map of the *locus* of an accident should not be admitted in evidence and sent to the jury room as an exhibit if, in addition to a delineation of the physical facts, it contains a number of marks representing lines of vision.

The case of *Dyson v. New York & N. E. R. Co.*, 57 Conn. 9, overruled, in so far as it holds that the whole duty of a railroad company as to signals and precautions at grade-crossings is defined by statute.

Argued May 5th—decided July 30th, 1925.

ACTION by an employer to recover sums paid by it to an employee under the Workmen's Compensation Act for injuries alleged to have been caused by the negligence of the defendant, in which action the employee entered as a party plaintiff, brought to the Superior Court in Middlesex County and tried to the jury before *Ells, J.;* verdict and judgment for the defendant, and appeal by the plaintiffs. *Error and new trial ordered.*

*Arthur T. Keefe,* with whom, on the brief, was *Charles L. Smiddy,* for the appellant (plaintiff Pratt, Read & Company).

*George C. Morgan,* with whom was *Abel P. Tanner,* for the appellant (plaintiff Jabez W. Rogers).

*James W. Carpenter,* for the appellee (defendant).

WHEELER, C. J.   Upon the trial the plaintiffs offered evidence to prove these facts: The plaintiff Rogers, a resident of Saybrook, was employed by Pratt, Read and Company at Deep River.  As a part of the wages paid their employees, the Company transported by motor bus its employees, including Rogers, from their homes to its place of business.  The defendant operated a railroad from Saybrook Point to Saybrook Junction, and thence to Hartford as a common carrier of passengers and merchandise in cars drawn by engines propelled by steam.  A short distance south of the station at Saybrook Junction the old Boston Post Road, a main public highway between Boston and New York, and much traveled, crossed at grade defendant's tracks.  The crossing was a dangerous one and due care required a flagman, gates, electric signals, or some other suitable means to warn and protect persons using the crossing from approaching trains.  On June 1st, 1920, Rogers entered at Saybrook this motor bus, with other em-

ployees of Pratt, Read and Company, and occupied the rear seat while the side curtains of the bus were drawn thus preventing a view from the sides by the passengers. Three tracks of defendant crossed the Boston Post Road at this point, the first of which as the crossing is approached from the north is a curve known as a "Y," the other two tracks being straight. At the time the bus approached the crossing the defendant had caused and permitted a number of freight cars to stand upon the "Y" track in such a position that the driver of the bus, Merrill, could not see an approaching train upon either of these straight tracks. When the bus had crossed the first two of these tracks and had gotten on to the third track, a passenger train of defendant traveling at a great rate of speed and approaching from Saybrook Point to Saybrook Junction struck the bus and injured Rogers. Defendant gave no warning of the approach of the train by means of a whistle, bell or other device for signaling the approach of the train, or furnished any other adequate warning of the approach of the train. Rogers, the driver, Merrill, and the other occupants of the bus did not hear any whistle blown or any bell sounded on the train. The engineer of the train knew that this crossing was a dangerous and unprotected crossing and that more than ordinary care was required in the operation of trains over the crossing. Because the engineer could not see the approach of the bus, due to the obstruction of his vision by the freight cars on the "Y" track and a garage and other objects, he should have kept a vigilant outlook for travelers using such crossing and should have continuously rung the bell of the engine and blown its whistle even beyond the statutory requirements. The engineer was not keeping a lookout when approaching the crossing. The defendant negligently failed by means of a flagman, gates, electric signal, or other suit-

able means at the crossing to warn persons, including Rogers, about to use the same, of approaching trains on its tracks.  Rogers was in the exercise of reasonable care and had no control over the operation of the bus.  The defendant knew, or ought to have known, of the approach of the bus, and could have avoided the injuries to Rogers if it had used reasonable care.  Pratt, Read and Company paid to Rogers through its insurer carrier, the Royal Indemnity Company, $4,836.44, being the compensation awarded him by the compensation commissioner.

The errors assigned are certain instructions of the court and rulings upon evidence.  The complaint alleged and plaintiffs' evidence tended to prove some seven or more acts of negligence.  These the court detailed in his charge as "(1) great speed; (2) negligently failed to keep a proper lookout on said engine; (3) negligently failed to sound the whistle; (4) negligently failed to ring the bell; (5) negligently failed to give any timely and sufficient warning to the driver of the automobile; (6) negligently ran the locomotive into the automobile."  A seventh ground, contained in paragraph five of the complaint, the court excluded from the consideration of the jury.  Plaintiffs complain of the charge that, "the plaintiffs are required to prove all the material allegations of their complaint and this applies, not only to proof of the negligence, or the lack of contributory negligence, but to the injuries and damages suffered."  "At no point in the charge," one of the plaintiffs' briefs says, "does the court refer to the rule that proof of one of many acts of negligence alleged in the complaint is sufficient to support a plaintiff's verdict."  In four other places in the charge, the language is susceptible of the construction that it was essential for the jury to find proven all of the material allegations of the complaint as to negligence.  Our rule

is undoubted: " 'Where several acts of negligence cause
but one injury, the plaintiff may allege all the acts of
negligence in one count and aver that they were the
cause, and any one of them proved upon the trial will
sustain his complaint.' "  *Ashborn* v. *Waterbury,* 70
Conn. 551, 555, 40 Atl. 458; *Dean v. Sharon,* 72 Conn.
667, 673, 45 Atl. 963.  Plaintiffs' counsel are incorrect
in saying that the court nowhere charged that proof of
one of many acts of negligence would be sufficient to
support a plaintiffs' verdict.  In the early part of the
charge the court read the allegations of negligence in
the complaint and then said: "They must, one or more
of them, be proved, as no other acts of negligence than
those which are fairly stated in the complaint can serve
as a basis for recovery by these plaintiffs."  Again, in
the latter half of the charge, the court said: "If you
find that the defendant was not negligent in any of the
ways alleged, then of course the plaintiffs cannot re-
cover and your verdict must be for the defendant.  If
you find that the collision occurred by reason of the
negligence of the defendant as set forth in the com-
plaint, then you will consider the question as to
whether the plaintiff Rogers was guilty of contributory
negligence, preventing the recovery of both plaintiffs."
The court groups a correct statement of the law with
an inadequate one.  Yet there should be no question of
the jury's understanding of this to be that failure to
prove the negligence in any one of the ways alleged in
the complaint would be fatal to the plaintiffs' right of
recovery.  The charge ought not to contain contra-
dictory statements of the law or statements which
might be so construed; neither ought the charge to be
required to be, or expected to be, as accurate in its in-
structions upon legal propositions as the opinions of a
court of last resort.  A charge is often required to be
delivered upon meager opportunity for preparation and

under the strain of an intense legal battle. We examine the charge to see if it fairly presents the case to the jury, in such way that injustice was not done under the rules of law to the legal rights of either litigant, and not with legal microscope, to search for technical flaws, inexact, inadvertent or contradictory statements. If such there be, we test them by the rule stated. Applying this test to this charge, we are of the opinion that the jury ought, upon the whole charge, to have understood that upon proof of any one of the acts of negligence alleged, they would have been entitled to have found that the plaintiffs had established the defendant's negligence.

Error is assigned "in failing to charge the jury upon the subject of concurrent negligence as applied to the facts disclosed by the evidence." Neither in their complaints nor in their requests to charge had the plaintiffs claimed that the accident resulted from the concurrent negligence of defendant and Merrill, driver of the bus. Nor did the facts claimed to have been proven by the plaintiffs make it incumbent upon the court, of its own motion, to have instructed the jury as to the possibility of the claim. It does appear that defendant offered evidence to prove and claimed to have proved that the accident happened through the negligence of Merrill, the driver of the bus, but defendant, of course, was not making the claim that the accident happened through the concurrent negligence of it and the driver. While the facts claimed to have been proven would have made it possible for the plaintiffs to have made this claim, or for the court of its own motion to have presented it to the jury, we would be quite unwilling to hold the court in error, under the circumstances of this case, for failing to present to the jury a claim of law not made by the plaintiffs and not necessarily required by the evidence before the jury.

The defendant's train was approaching an admittedly unprotected and dangerous crossing. The plaintiffs offered evidence to prove that in approaching this crossing the engineer had taken his eye off the crossing and plaintiffs now claim that if this was necessary in the performance of his duty, he ought to have so reduced the speed of the train that he could give his undivided attention to this crossing. Plaintiffs claim that the court excluded from the consideration of the jury these facts as a basis for their finding that defendant was negligent in not reducing the speed of the train, and assign as error the court's failure to charge "that the engineer of said train had at the time he approached the crossing no greater duty than to keep a continuous and vigilant lookout for travelers upon the highway and for a failure to do this that the defendant would be guilty of negligence." Plaintiffs have failed to note the statement in the court's charge concerning the engineer's conduct in the particular criticised. It was upon this point complete and fair. "The conduct of the engineer as he approached the crossing should receive your careful consideration, in the light of the principles of law I have given you. He says that as he approached he glanced to the right and to the left. There was nothing on the track to obstruct his view. 'I just glanced,' he said, as I remember his testimony, and then 'took my eyes off for a few seconds to do my own duty. I have other duties, I had a bad crossing ahead, a main line crossing, and a station.' Considering the fact that he was approaching a grade-crossing over the Boston Post Road, a much traveled highway, although remembering it was early in the morning, the crossing not being protected by gates or flagman or bell, was it the conduct of a reasonably prudent engineer under the circumstances to glance at the crossing and then take his attention off the crossing

and confine it to other duties in connection with the handling of the train, some of those duties being in connection with the operation of the train as to purely railroad operating difficulties beyond the Post Road crossing? This is a question, and an important question, asked by the plaintiff. . . . It is a question of fact for you to determine, whether he was keeping a reasonable lookout or not, under the circumstances." The criticism of the charge likewise has failed to note the court's instruction as to the legal duty of the engineer, which was unexceptionable. "It was the duty of the engineer to have operated his train as a reasonably prudent engineer, skilled in the business, would have operated an engine under like circumstances. In this case the engineer owed the duty of keeping a reasonable outlook, which in that connection meant a vigilant outlook, for travelers upon the highway, at or near the crossing so as to avoid injury to them, and if the railroad failed to perform its duty, its liability is the same whether it saw or might have seen the person in time, by the exercise of reasonable care, so as to have avoided the injury. . . . If you find that the automobile was in peril and the engineer knew, or ought to have known it, then reasonable care required him to use every precaution to avoid the injury to the automobile and its passengers which a reasonably prudent person similarly situated would use. If a reasonably prudent person would have, under these circumstances, blown the whistle again, or checked the speed or stopped the train, it was incumbent upon the engineer to have done this; and if by so doing the injury to the plaintiff Rogers would not have occurred, the defendant is liable, unless Rogers' own negligence thereafter essentially contributed to his injuries."

The plaintiffs offered evidence tending to prove that the award of the compensation commissioner was paid

to Rogers by the insurer of Pratt, Read and Company, and claimed that under these circumstances the jury should have been instructed that the payment to Rogers was not made by the insurer, but made for and in behalf of this Company, and that, in the event of a plaintiffs' verdict, Pratt, Read and Company and not the insurer would recover damages. The court clearly instructed the jury that Pratt, Read and Company, as the employer of Rogers, became bound by the award of the commissioner, and had paid this to Rogers, but that the fact of their having done so did not have anything to do with the question whether this defendant is liable in damages for the injury suffered by Rogers. Further that under General Statutes, § 5346, as amended by § 2 of Chapter 306 of the Public Acts of 1921, any damages recovered by Rogers in this action would be applied first to the payment of Pratt, Read and Company for the award paid by them, and Rogers would retain the balance. This instruction was all that plaintiffs were entitled to; in no event was the court bound to instruct the jury as to the relation existing between the insurer and Pratt, Read and Company.

Under the fourth and fifth assignments of error the plaintiffs complain that the court charged the jury that they could not find the defendant guilty of negligence by reason of there being no gates, flagmen, electric signals, bells or any other form of protection at this crossing, since the legislature had not imposed this duty upon the defendant. The court charged: "Paragraph five alleges that the defendant negligently failed by means of a flagman, gates, electric signals or other suitable means at said crossing to warn persons of approaching trains. Now, it is admitted, gentlemen, that there were no gates, no flagman, no electric signals at said crossing. It is enough to say of this allegation of negligence that the railroad company had never been

required to maintain a flagman, or a gate, or a bell, there, and that therefore it was under no obligation to provide any, and the fact that it did not do so does not make it liable for negligence. I charge you that this was not negligence on the part of the railroad, in failing to provide these signals at the crossing. There was no duty on the defendant under the circumstances disclosed by the evidence to provide gates or a flagman or an electric signal at this crossing. The absence of a flagman at this crossing, and of a crossing signal, bell, or of gates, or of any other form of protection does not of itself constitute a ground of negligence for which the defendant can be held liable, for the special designation by the statute of the whistle and bell signals excluded any obligation of providing other signals. In this State the legislature has assumed the regulation of this matter by providing specifically what signals shall be given of the approach of trains to crossings, and by instructing the Public Utilities Commission to require other signals at crossings when they shall deem them necessary for the protection of the public."

Again the court charges: "The only warning which he was obligated by statute to give was—(a) to sound the whistle or bell of the engine when it was approaching and within eighty rods of the crossing (b) to keep such bell or whistle occasionally sounding until the engine had crossed the highway. . . . The legislature has a right to determine what warnings of the approach of a train to the crossing should be given; and the giving of such statutory warning would be the limitation of the railroad's duty in the giving of such warning. The legislature has specifically provided what signals shall be given. This defines the whole duty of the railroad company as to signals of an approaching train under ordinary circumstances. There may be exceptional cases where something more than a literal

compliance with the statutory provisions may be required, and that is caused when, if special facts or circumstances are known to the engineer which require him, in the exercise of reasonable care, to do more than comply literally with these statutory provisions. This issue is a simple one; if the engineer or fireman did not blow the whistle or ring the bell as thus required, the defendant was negligent. This issue is a simple question of fact and is submitted to you as a question of fact under the evidence to decide."

Under this charge the court entirely eliminated the acts of negligence alleged in paragraph five of the complaint quoted above. It instructed the jury substantially in the language used in *Dyson* v. *New York & N. E. R. Co.*, 57 Conn. 9, 17 Atl. 137, that the regulation of the signals to be given of the approach of trains at crossings was within the control of the State legislature and their action was exhaustive and defined the whole duty of the railroad. Since the legislature had committed the duty of determining what signals or warning shall be given, exclusive of those it specifically provides for, to the Public Utilities Commission, and its power in the premises was exhaustive, and it had never ordered the defendant to maintain these, the court concluded "there was no duty on the defendant under the circumstances disclosed by the evidence to provide gates or a flagman or an electric signal at this crossing." The defendant relies in support of the charge that no negligence could be predicated upon the absence of a flagman, etc., at the crossing, upon the *Dyson* case.

In *Bates* v. *New York & N. E. R. Co.*, 60 Conn. 259, 22 Atl. 538, at 266, we say: "The statute (General Statutes, § 3554, now § 3794) provides that 'every person controlling the motions of any engine upon any railroad, shall commence sounding the bell or steam

whistle attached to such engine when such engine shall be approaching, and within eighty rods of, the place where said railroad crosses any highway at grade, and keep such bell or whistle occasionally sounding until such engine has crossed such highway.' The practical interpretation of this statute is to sound the whistle when within eighty rods of the crossing, and to ring the bell until after passing the crossing. The language of the statute is in the alternative, and it will be literally complied with if either is done to the exclusion of the other; but in a matter of this importance, where the highest degree of diligence may justly be required of railroad companies to protect life at crossings, a strictly literal compliance with the statute is not always enough; especially when it is apparent that such compliance may be ineffectual. There are times when statutes should be complied with according to their spirit and intent. Particularly is that so when the duty which the statute is designed to enforce does not originate in and is not measured by the statute. Here is a duty which exists at common law. It has its origin in the humane instincts of the race. Obviously the statute was not designed to define and limit the duty of railroad companies. They cannot do less than the statute requires; there are times and occasions when they may properly be required to do more. If both the whistle and bell would be more effective, the statute ought not to be so construed as to prevent their use from being required. Inasmuch as both are at hand ready for instant use, there can be no hardship in requiring both. And so this court was fully justified in saying on this subject 'that an omission to sound the whistle, except at a place where the railroad commissioners had authorized the whistle to be omitted, even if the bell was rung, would undoubtedly be regarded as

negligence.' *Bailey* v. *Hartford & Conn. Valley R. Co.,* 56 Conn. 444 [16 Atl. 234]."

In *Dundon* v. *New York, N. H. & H. R. Co.,* 67 Conn. 266, 34 Atl. 1041, at 270, we quote from the *Dyson* case and comment upon and qualify it thus: " 'Nor do we think the defendant was guilty of negligence in not providing at the crossing additional signals to those required by statute. In this State the legislature has assumed the regulation of this matter by providing specifically what signals shall be given of the approach of trains to crossings, and by instructing the railroad commissioners to require other signals at crossings when they shall deem them necessary for the protection of the public. This legislation is exhaustive and defines the whole duty of railroad companies in the matter to which it relates.' It is indeed true that the foregoing statement should be read in the light of, and regarded as consistent with, what this court said later in *Bates* v. *New York & N. E. R. Co.,* 60 Conn. 259 [22 Atl. 538] to the effect, and as stated in the headnote, that in exceptional cases 'where the highest degree of diligence may justly be required, a literal compliance with the statute may not be enough.' But it is the province of the trial court to determine whether the case before it presents the exceptional features which call for the application of the additional requirement, as demanded by common prudence and the test of the conduct of the man of such prudence."

In *Tessmer* v. *New York, N. H. & H. R. Co.,* 72 Conn. 208, 212, 44 Atl. 38, we state the duty of the engineer as to sounding a whistle and ringing a bell at a crossing: "We think § 3554 [now § 3794], as thus construed, prescribes and defines the entire duty of the engineer with respect to the signals to be given by him, under all ordinary circumstances, when his engine is approaching and is about to pass over a public grade-

crossing. There may be in some cases of this kind special facts and circumstances which, if known to the engineer, would require him to do more than comply with the provisions of § 3554 [§ 3794], but these cases will be exceptional and rare, and they are such as cannot from their very nature be provided for by statute." In *Rowen* v. *New York, N. H. & H. R. Co.*, 59 Conn. 364, 21 Atl. 1073, we held that notwithstanding an order of the railroad commissioners dispensing with the blowing of the whistle, it is yet the duty of the engineer to blow it if necessary to prevent accident and if the exercise of reasonable care requires it. In *Cowles* v. *New York, N. H. & H. R. Co.*, 80 Conn. 48, 66 Atl. 1020, we held that, unless required by statute, a railroad company is under no definite and absolute legal obligation to cut down trees and bushes within the limits of its right of way which obstruct the vision of a traveler as he approaches a grade-crossing; but the existence of such obstruction is a circumstance to be taken into account by the trier in determining whether the railroad used due care in running its trains over such crossing at a given time. In concluding our discussion of this case, we say (p. 57): "We need not now discuss the range of possible circumstances proper to be considered in determining the use of ordinary care by a railroad company in operating its cars at a grade-crossing; nor the possible precautionary measures, at crossings of peculiar and exceptional danger, such ordinary care may require." See also *Elliott* v. *New York, N. H. & H. R. Co.*, 83 Conn. 320, 323, 76 Atl. 298. In *Elukowich* v. *New York, N. H. & H. R. Co.*, 291 Fed. 574, the District Court, relying upon the claim of defendant's counsel that the *Dyson* case was the law of Connecticut, reversed its charge as already made and charged the jury substantially in accord with the *Dyson* case. A verdict being rendered for defendant, the plaintiff

moved for a new trial and the court, after reviewing the Connecticut decisions, says (p. 577): "From a careful examination of these cases the court is impelled to conclude that Connecticut has brought herself in line with the general rule, as announced by the United States Supreme Court in the case of *Grand Trunk Ry. Co.* v. *Ives,* 144 U. S. 408, 12 Sup. Ct. 679, . . . that it was a question of fact for the jury to determine whether the conditions were such as to put upon defendant the burden of additional safeguards; . . . and that the verdict of the jury should be set aside and a new trial granted." The court correctly analyzed our decisions. The statement of the *Dyson* case upon the point under discussion has long since ceased to be the law of this jurisdiction.

We understand our law as to the duty of a railroad in the operation of its trains over a grade-crossing, toward a passenger on the train, to be to exercise the highest degree of care, but toward a traveler upon the highway about to cross the railroad, to be this: The railroad owes to the traveler the duty of exercising reasonable care, which increases in degree as the danger of the crossing to the traveler increases. Ordinary care, as in all other dangerous situations, may be great, or even very great, care. When the legislature has prescribed certain signals to be given by those operating the train before passing the grade-crossing, or has prescribed certain protection for the traveler, as by a flagman or gate, automatic signal or other device, these will in the ordinary case measure the duty of the reasonable care of the railroad to the traveler. But when the crossing is not the ordinary one, but is more than ordinarily dangerous by being much traveled, or by having the view of the track obstructed by the railroad or by others, or because of the noise making the ordinary signal difficult to hear, or by reason of a like cause, it

becomes a question of fact for the jury to determine, what, if any, additional signals or precautions should have been maintained by the railroad in the exercise of its duty of using reasonable care. When those to whom the legislature has delegated the authority of ordering, at a grade-crossing, a flagman, gate, or automatic signal or other device affording protection to the traveler crossing, have ordered certain means of protection at the crossing or refused to make such order after hearing, in the case of the more than ordinarily dangerous crossing, these are facts to be considered by the jury in determining what reasonable care required the railroad to do, but they are not conclusive. When those to whom the legislature has delegated the authority of ordering, at a grade-crossing, a flagman, gate, or automatic signal or other device, have failed to make any such order after hearing, no presumption can arise that reasonable care on the part of the railroad would not require such protection; the question is one of fact for the jury to determine whether, in the exercise of reasonable care, it was the duty of the railroad to have provided any such protection.

*Grand Trunk Ry. Co.* v. *Ives,* 144 U. S. 408, 12 Sup. Ct. 679, states the generally adopted law of the country upon this point. In this case the court approved of this instruction to the jury: "The duty may exist outside the statute to provide flagmen or gates or other adequate warnings or appliances, if the situation of the crossing reasonably requires that—and of this you are to judge—and it depends upon the general rule that the company must use its privilege of crossing the streets on its surface grade with due and reasonable care for the rights of other persons using the highway with proper care and caution on their part." That "this instruction," it said, "is in harmony with the general rule of law obtaining in most of the States,

and at common law, we think there can be no doubt. . . . The underlying principle in all cases of this kind which requires a railroad company not only to comply with all statutory requirements in the matter of signals, flagmen and other warnings of danger at public crossings, but many times to do much more than is required by positive enactment, is, that neither the legislature nor railroad commissioners can arbitrarily determine in advance what shall constitute ordinary care or reasonable prudence in a railroad company, at a crossing, in every particular case which may afterwards arise. For, as already stated, each case must stand upon its own merits and be decided upon its own facts and circumstances; and these are the features which make the question of negligence primarily one for the jury to determine, under proper instructions from the court. We think, therefore, that, in that portion of the charge which we have been discussing, the court below committed no error to the prejudice of the defendant."

Toward the conclusion of the charge of the trial court which we quoted, the court does say: "There may be exceptional cases where something more than a literal compliance with the statutory provisions may be required, and that is caused when, if special facts or circumstances are known to the engineer which require him, in the exercise of reasonable care, to do more than comply literally with these statutory provisions." The court obviously refers to the statutory signals by the engineer as to blowing the whistle or ringing the bell. It does not refer at all to the acts of negligence alleged in paragraph five of the complaint, the charge concerning which the appellant makes his fourth and fifth assignments of error. The instruction was inadequate, in that it gave the jury no idea of what special facts or circumstances in the case might be found by them to

take the case out of the ordinary and place it in the exceptional category requiring additional precautions in the exercise of reasonable care.

Other criticisms of the charge are either not well taken or too inconsequential to predicate harmful error upon. Rulings upon evidence are not erroneous except in one instance. Defendant's exhibit one, a map made by its engineer and representing the *locus* at the time of the accident, and containing a number of lines thereon representing lines of vision, was admitted in evidence over plaintiffs' objection and exception. The lines of vision had no place upon the map. It appears that they were testified to by the engineer. Placing them upon the map before it was introduced in evidence, gave them undue prominence over other oral testimony, since the map as an exhibit went to the jury room. The matter was one within the sound discretion of the court. Under the circumstances of this case its admission was not harmful error.

There is error and a new trial is ordered.

In this opinion the other judges concurred.