## SHINN *v.* SMITH.

### Opinion delivered October 22, 1906.

NEGLIGENCE—INJURY TO ANOTHER'S PROPERTY.—Where defendant owned a "fish dock" near which a steamboat of plaintiff's was moored, and defendant moved the boat out into the lake and fastened it to a stump, where it remained ten or fifteen days and sank, defendant would be liable if the loss was due to a wilful and unnecessary injury committed by him; but not if he moved the boat to protect his property, though by his negligence in such removal the boat sank, if defendants or their agent knew of such removal and danger of the boat's sinking and refused or neglected to exercise reasonable precaution to save it, when they could have done so.

Appeal from Craighead Circuit Court; *Allen Hughes,* Judge; reversed.

*Lamb & Caraway,* for appellant.

1. If the owner of property, knowing of the wrongful act of the defendant, could yet have avoided the accident, there can be no recovery. 38 Ark. 357; 11 L. R. A. 361; 53 L. R. A. 618; Beach on Con. Neg. § 19.

2. Instructions No. 2, given on the part of plaintiff, and No.'s 2 and 7 given on the part of defendant, are conflicting and irreconcilable, and therein the court erred. 87 S. W. 446; 88 S. W. 911; 59 Ark. 417; 77 Ark. 201.

*Mathes & Westbrook,* for appellees.

BATTLE, J. D. A. Smith, R. E. Smith, and D. B. Smith, as D. A. Smith & Sons, brought this action against E. F. Shinn to recover damages for the loss of a small stern-wheel steamboat, about 46 feet long and 11 feet wide, named Anna May. Plaintiffs allege in their complaint that they were the owners of the boat, and operated the same on the waters of Big Lake and

Little River, in Mississippi County, Ark.; that the defendant, E. F. Shinn, without right took possession of said boat, and while operating her for his own use and benefit she was sunk; that the boat was of the value of $1,500, and that the wrongful acts of the appellant were the cause of her destruction, and asked judgment for the sum of $1,500 as damage.

"Appellant in his answer denies any information as to the ownership of said boat; denies at the time charged or at any time he forcibly or without right or authority, or at all, unmoored her and used and operated her for his own use and benefit, or that said boat was used at all by him; denies that the boat was in good condition, or that she was damaged in any way through any wrongful act of his. As a further defense, he states that the boat was old and unfit for service; that her dangerous and sinking condition was well known to the appellees, and that, if she was damaged at all, it was through their own negligence and lack of care."

A trial by a jury resulted in a verdict for plaintiffs for the sum of $150, for which judgment was rendered in their favor, and defendant appealed.

"The following is a synopsis of the evidence. First, upon the part of the plaintiffs, the appellees here, R. E. Smith, one of the appellees, was introduced and testified: The boat was a thirty-ton craft, and her hull had been rebuilt the year before; that she was built for the navigation of St. Francis and Little rivers, and carried a license as a steamboat; that she was worth about $600 or $700; that in June, 1902, as he was informed, the appellant unmoored the boat from her fastenings at the shore, and had moored her to a stump in the lake, where she sank. That he was the engineer of said boat, and that she was in good condition. On cross-examination he said that the machinery was worth about $500, her hull about $150, the superstructure $50, and other material about the boat about $75; that the machinery of the boat could have been removed, and the superstructure also taken off, that this boat had once before sunk, and been raised for about $100; that Sam Bunch was the agent of appellees for the care and protection of the boat.

"D. A. Smith also one of the appellees, testified to the good condition of the boat before she was sunk, and what her condi-

tion was when he found her after she was sunk; that the water was from six to ten feet deep where she was lying, and that she was out from seventy-five to one hundred yards from the shore. He thinks the boat could have been raised, but to do so would have cost $250. He also on cross-examination stated that Sam Bunch was the watchman whose duty it was to look after and care for the boat.

"Will Wells also testified for appellees, and said that the defendant, the appellant here, had asked him and another man to move the boat from where she was moored against the bank, and knocking against the fish dock of appellant, to some other place; that they carried her out into the lake and tied her to a stump; Tidwell and Parker assisted him in doing this; that they tied her in what they supposed was a safe and secure place and in a safe manner; that she stayed there ten or fifteen days before she sank; that he did not know the cause of her sinking.

"W. S. Brady testified for appellees that he lived about a mile and a half south of Manila and about a mile and a half from the lake where the boat sank; that he was one of the parties who helped remove the boat from her mooring and fasten her out in the lake."

The defendant then introduced the following proof:

"Sam W. Bunch, who testified that he was acquainted with the parties to the suit: that he had agreed to and was looking after the boat for the Smiths (the appellees here): that he saw her at the time she was being moved from her mooring, from the shore to the stump, where she was tied and afterwards sunk; that he saw her every day, and that she was tied out there ten or fifteen days before she sank; that he notified the appellees of her condition; that after her condition was apparently dangerous he could have saved her with an hour's or two hours' work. That Little Dan herein referred to is D. B. Smith, one of the appellees. That in his judgment the boat could have been raised for $50. On cross-examination he says he did not think the boat was in a safe position; that after he told Dan Smith of her condition they did not have time to have prevented the accident, but on re-direct examination he said the boat sank either the night that he notified them that day, or the following night.

"Albert Youngblood testified for appellant that the cause of

the sinking of the boat was not a stump or log under her side; that she was in good condition, and could have been raised with $50 or $100; that he himself was a pilot, and familiar with the handling of steamboats.

"Sherman Stone was introduced for appellant, and testified that he was the pilot on this boat; that he was familiar with her, and that her value would not exceed $250; that her sinking was caused by open seams above the water line, and that the boat was uncalked; that she filled with the rain, and settled to these uncalked seams, and from that cause sank; that no log or stump under her gunnels could have caused her to sink.

"The appellant for himself testified that he did not employ any one to remove the boat, but that he had permission from the appellees to have her removed, and that he asked some one for accommodation to do it, and that she was taken out and moored in what seemed to him to be a safe and secure place, and in a secure manner; that she remained there ten or fifteen days before she sank; that he himself was not aware of the fact that she was in any danger, or at least immediate danger.

"R. E. Smith was recalled for appellee, and testified that the boat had been calked about three months before she sank; that a calking would last about one boating season, which was six months.

"R. E. Smith was again recalled and testified that he was away from home upon the Mississippi River, trying to secure laborers; that when he came home the boat was already sunk; that he lived about three miles and a half from where she sank; that he had never given the appellant authority to remove the boat from where he had left her moored to the place where she was sunk. Upon cross-examination he reiterated that Sam Bunch was to look after and care for the boat.

"D. A. Smith, one of the appellees, being recalled, said he never had received any notice of the boat's dangerous condition, or that she was tied out in the lake until after she sank; also that he never had offered to sell the boat for as little as $300."

The court, over the objections of the defendant, instructed the jury, in part, as follows:

"No 2. If by the defendant's wrongful act the boat was moved into the stream negligently, and it afterwards appeared

that the boat was sinking, and he had equal means with the plaintiff of saving the same, it is no defense that plaintiff might have lessened the damage by performing the duty for him."

And instructed the jury, at the request of the defendant, as follows:

"No. 2. If you find from the evidence that the defendant removed the boat, or had it moved from the bank out into the stream or lake, and by reason of such removal it sank, and that after its removal the plaintiffs, or either of them, or their agent or employee, knew of such removal, and of the danger of the boat's sinking, and refused or neglected to exercise reasonable care and precaution to save it, then plaintiffs can not recover.

"No. 7. The jury is instructed further that if they find that the sinking of the boat and consequent damages were brought about by defendant Shinn or by his agents or employee, and that, if they also find that after said boat was moved the plaintiffs themselves, or their agents or employee, had knowledge of the boat's dangerous position, if its position was dangerous, and the said plaintiff's agent or employee neglected to use and employ reasonable means of saving the boat, then defendant would not be liable."

The instruction numbered 2, and given over the objection of the defendant, and the instructions given at the request of the defendant, should not have been given.

It appears from the evidence that appellant owned a "fish dock" near which the steamboat of appellees was moored, and the boat was knocking against the dock; that appellant caused the boat to be taken out into the lake about 150 yards and fastened to a stump; and that it remained there ten or fifteen days and sank. Now, if he moved it for the purpose of protecting his property and under circumstances which showed he did not intend to injure appellees, but did so in a negligent manner, and by reason of such negligent removal the boat sank, and appellees, or either of them, or their agent or employee whose duty it was to look after the boat for the purpose of protecting it, knew of such removal and of the danger of the boat's sinking, and refused or neglected to exercise reasonable care and precaution to save it, and by the use thereof could have done so, appellees would not be entitled to recover anything in this action. On

the contrary, if the injury was wilful and unnecessary, he would be liable for damages. *Sandford* v. *Eighth Avenue Railroad Company* (N. Y.), 80 Am. Dec. 286; *Birge* v. *Gardiner,* 19 Conn. 507; *Rowen* v. *N. Y., N. H. & Hartford R. Co.,* 59 Conn. 364; *Ga. Pac. Ry. Co.* v. *Lee,* 92 Ala. 262, 270.

The instructions given were in irreconcilable conflict and misleading.

We do not decide that the evidence was sufficient to sustain the verdict.

Reverse and remand for a new trial.